**Flanders Lumber & Building Supply Co., Inc. and Dana Corporation v. Town of Milton and Milton Zoning Administrator**

[258 A.2d 804]

No. 58-68

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**
Opinion Filed October 14, 1969

*Wick, Dinse & Allen,* Burlington, for plaintiffs.

*Latham & Eastman,* Burlington, and *Willis E. Higgins,* Williston, of counsel, for defendants.

**Shangraw, J.** This is a petition to the court of chancery in Chittenden County for a declaratory judgment pursuant to 12 V.S.A. § 4711 *et seq.* The petition seeks and adjudication of the rights and liabilities of the petitioners and of the petitionees under the zoning ordinance and subdivision ordinance of the Town of Milton, Vermont. The controversy relates to the development for residential purposes of land in the Town of Milton known as Milton Meadows.

A hearing was held before the chancellor on August 12, 1968. Findings of fact, and amendments thereto, were filed. A decree was issued September 25, 1968.

Petitionees have appealed from the decree which enjoined the petitionees from requiring compliance by the petitioners with the Milton subdivision ordinance and also requiring issuance of building permits by the petitionees to petitioners for lots 21, 22, 45 and 114 in the development in question upon the showing of a compliance by the petitioners with the Milton Protective Zoning Ordinance.

As revealed by the briefs of the parties, there appears no dispute as to the following:

On October 25, 1967 the petitioner, Dana Corporation, acquired a parcel of land in the Town of Milton, situate on Town Road No. 50, containing ninety-five acres, more or less. Prior to its purchase Dana Corporation ascertained that the land was zoned under the zoning ordinance of Milton as agricultural. Application was made for a change in the zoning ordinance from agricultural to residential. The application was granted and the property was zoned residential. Under the terms of the

Milton Zoning Ordinance then and now in effect, single family dwellings are permitted in residential districts.

The petitioners are interlocking corporations and basically owned by the same persons. The purchase price of the land in question was $71,000.00. An engineering firm was employed to lay out the lots in the proposed development, do the necessary surveying, place lot markers on the corners of the lots, lay out streets, engineer a system of water supply for the development and, in general, perform all necessary engineering services, incident to the development of the land for a housing development. These engineering services cost $15,497.10. A water system was installed at a substantial cost.

Petitioners filed plans showing the lot and road layout for a proposed subdivision on the land with the town clerk of Milton on December 2, 1967. By agreement of the parties, a change was made relating to the roads. The plans were thus approved by the selectmen. Eighteen building permits were issued under the Milton Protective Zoning Ordinance and houses were built on these lots by petitioner, Flanders Lumber & Building Supply Co., Inc.

On February 9, 1968, the petitioner, Flanders Lumber & Building Supply Co., Inc., applied for building permits on lots number 21 and 114 which were rejected by the zoning administrator of Town of Milton, petitionee, on February 13, 1968 as "not acceptable." The underlying reason for this refusal, as expressed in a letter from the selectmen to the zoning administrator dated January 3, 1968, was the view that due to the rapid building of homes in the town, further definite planning was required to properly protect the health and welfare of the residents of the town.

On March 3, 1968, the selectmen approved subdivision regulations for submission to the voters at a town meeting. A copy of the proposed regulations was filed in the town clerk's office. At the town meeting held on March 5, 1968, these subdivision regulations were adopted.

On March 7, 1968, the petitioner, Flanders Lumber & Building Supply Co., Inc., applied for building permits on lots number 22 and 45. These permits were rejected by the zoning administrator on March 9, 1968. The rejection pointed out that the subdivision ordinance was in effect, and that approval of the subdivision plan by the commission established by the

ordinance would be necessary before building permits could be issued.

Three of the four denials were appealed to the zoning board of adjustment under 24 V.S.A. § 3017, which board affirmed the denials. From this board an appeal lies to the county court, and ultimately here for review. 24 V.S.A. § 3022. Petitioners appealed to the Chittenden County Court on May 10, 1968 from the decision of the zoning board of adjustment which denied building permits for lots numbered 21 and 114. No appeals were taken to the Chittenden County Court from the denial of building permits on lots 22 and 45.

In the midst of this appellate process, the petitioners brought a petition for a writ of *mandamus* directly to this Court seeking an order to compel the issuance of the permits by the zoning officer of the Town of Milton.

This Court dismissed the petition. *Dana Corporation, et al. v. Yusitis, et al.,* 127 Vt. 201, 243 A.2d 790. At page 203 of the opinion this Court observed that it is fundamental that a writ of *mandamus,* as an extraordinary remedy, is not to operate as a universal alternative to appeal. Also, at page 204 it was stated, "* * * we are not, at this stage, persuaded that we should presume that the prescribed appellate relief is going to be inadequate or unavailable." ·

Then followed this petition dated July 2, 1968 for a declaratory judgment. It seeks to test the validity of the Milton Protective Zoning Ordinance and the Milton Subdivision Ordinance insofar as they pertain to the development in question. The petition alleges that the zoning and subdivision ordinances of the Town of Milton are unconstitutional, invalid, and of no legal force and effect.

Petitioners therein request that the zoning administrative officer of the Town of Milton be ordered to issue building permits on lots numbered 21, 22, 45 and 114, and on all subsequent lots upon which application for permits may be made by the petitioners in this development.

The petition initially included as parties defendant, the Village of Milton, and Vincent Yusitis named therein as its zoning administrative officer. On motion before hearing each was dismissed as parties defendant in the case.

The asserted basis for testing the Milton Protective Zoning Ordinance is the denial of building permits numbered 21 and

114 finally appealed to the Chittenden County Court. The reason for testing the subdivision ordinance is the denial of building permits numbered 22 and 45, one of which was not appealed to the Milton Zoning Board of Adjustment. Neither denial was appealed to the Chittenden County Court.

In the findings of fact, as supplemented, the chancellor found that the Milton Protective Zoning Ordinance was validly enacted and of full force and effect.

It also found that no comprehensive plan for the future development of the Town of Milton had been adopted under the provisions of 24 V.S.A. § 2904.

The chancellor further determined that the subdivision ordinance of the Town of Milton to be of no force and effect in that 24 V.S.A. § 2905 had "not been followed". This section reads:

> § 2905. Authority; plans
>
> In municipalities which have adopted an official municipal plan as provided in section 2904 of this title, the city council, selectmen, or village trustees, as the case may be, may by ordinance or resolution, authorize and empower the planning commission to approve subdivision or area development plans showing new streets or highways.

The basis for the chancellor's holding that the subdivision ordinance was of no force and effect appears to be that the Town of Milton had no official municipal plan as called for by section 2905, *supra.*

A related section, 24 V.S.A. § 2906, provides:

> § 2906. Notice; hearing
>
> Before such approval is given, notice of submitting such plan with the planning commission shall be filed by the owner in the town or city clerk's office and a public hearing shall be held by the planning commission and at least fifteen days notice of the time and place of such hearing shall be published in a newspaper of general circulation in such municipality.

The chancellor further found that the above section had not been complied with in that notice of the public hearing had been given by publication less than the required fifteen days before the hearing.

These sections were repealed by No. 334 of the Acts of 1967, (Adj. Session) effective March 23, 1968. Since the present applications were submitted to the Milton Zoning Administrator prior to the effective date of No. 334, the prior law applies. 24 V.S.A. Chapter 91.

The findings of fact continue by stating that the zoning ordinance of the Town of Milton requires that an applicant for a building permit meet the health requirements of the Vermont State Department of Health as well as the water system standards of the Public Service Board of the State of Vermont and that such applicant construct streets within the Milton Meadows development in accordance with an agreement with the selectmen of the town. The findings reveal that the petitioners have met each requirement of the Milton Protective Zoning Ordinance relating to building permit on lot No. 114.

The chancellor further found that the applications to construct dwellings on lots 21, 22 and 45 in the Milton Meadows development meet each and every requirement of the zoning ordinance of the Town of Milton, except insofar as they do not meet the above health, water and street requirements.

On September 25, 1968, a decree followed enjoining the zoning administrative officer of the Town of Milton from requiring compliance by petitioners with the Milton subdivision ordinance.

The decree further ordered that such administrative officer shall issue permits for construction on any lot in the development known as Milton Meadows which conform to the requirements of the zoning ordinance of the Town of Milton and when roads are constructed in accordance with the required agreement between petitioners and the Town of Milton.

It also contains the provision that the zoning administrative officer shall not deny permits on the grounds that petitioners have not complied with the "usual sanitary and health requirements" on any lot for which petitioners have met the health requirements of the Vermont State Department of Health as well as the water system standards of the Public Service Board of the State of Vermont.

The decree concludes by stating, "The Zoning Administrative Officer of the Town of Milton shall issue permits to petitioner on Lots 21, 22, 45 and 114 within the said development of Milton Meadows for which application has been made

upon a showing by the Petitioner of compliance with the health and street requirements herein above set forth."

Petitioners failed to appeal to the county court from the denial of building permits on lots numbered 22 and 45. Failing so to do, it is now the contention of petitionee that petitioners lost the right to challenge the validity of the subdivision ordinance. Petitionees admitted in their answer that an actual controversy existed as to lots 21 and 114 but denied its presence as to lots 22 and 45.

The applicable statute, 12 V.S.A. § 4712, reads:

A person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

■ ■ As a remedial statute the Declaratory Judgment Act is entitled to liberal construction to effectuate its salutory purpose. *Farm Bureau Mut. Auto. Ins. Co.* v. *Houle*, 118 Vt. 154, 158, 102 A.2d 326. The case of *Curtis* v. *O'Brien*, 117 Vt. 52, 57, 58, 84 A.2d 584, and that of *Gifford Memorial Hospital* v. *Town of Randolph*, 119 Vt. 66, 71, 118 A.2d 480, stand for the proposition that a proceeding for a declaratory judgment may be maintained, where a controversy exists, even though another remedy is available.

■ A person whose property would be harmfully affected by an amendment of a zoning ordinance has been regarded as entitled to bring proceedings for a declaratory judgment as to the validity of the amendment. 22 Am.Jur.2d, Declaratory Judgments, § 29. *Keller* v. *Council Bluffs*, 246 Iowa 202, 66 N.W.2d 113, 51 A.L.R.2d 251.

■ If the question is one of law or jurisdiction of the Zoning Board of Adjustment, it is undoubtedly judicial economy and wisdom to decide the issue by declaratory judgment before the administrative channel has been invoked or exhausted. Bouchard, Declaratory Judgment, p. 342 (2d Ed.).

Considering the circumstances, and desired relief from uncertainty, the chancellor properly assumed jurisdiction in granting declaratory relief as to all lots, including those numbered 22 and 45 in the subdivision.

■ A municipality has zoning authority only in accordance with, and subject to, the terms and conditions imposed by the state in making the power grant. *Thompson* v. *Smith,* 119 Vt. 488, 498, 129 A.2d 638; *National Advertising Co.* v. *Cooley,* 126 Vt. 263, 266, 227 A.2d 406.

Petitionees claim that 24 V.S.A. § 2905 does not require the adoption of an official municipal plan as provided for in 24 V.S.A. § 2904 before a town can regulate subdivisions. Such claim is based on the contention that if the selectmen wish to delegate their authority to regulate subdivisions to the planning commission, then and only then is an official municipal plan required.

24 V.S.A. Chapter 65 provides for municipal planning. Under section 2901 thereof a municipality is authorized to create a municipal planning commission consisting of five persons. In towns, such commission shall consist of the chairman of the board of selectmen and four other persons appointed by him.

Under section 2904 such a commission shall have power to adopt a comprehensive plan for future development of the municipality which shall be based primarily upon public welfare. Under subdivision (5) of this section the commission shall have the power "To recommend the adoption of ordinances, for the division of the municipality into districts or zones based upon the height, ground area and use of buildings and structures as may be consistent with existing law."

In support of petitionees view that a compliance with section 2905, *supra,* and related sections was not required, attention is called to the subdivision ordinance which does not delegate the regulatory authority to a Milton Planning Commission, as such, but to a commission consisting of the "Milton Planning Commission, Board of Selectmen, Board of Adjustment and Zoning Administrator."

The chancellor, in effect, determined that the provisions of Chapter 65 were controlling in this cause by finding that the town had failed to comply with section 2905, *supra.* Public hearings were held by the commission on the subdivision ordi-

nance. The chancellor found, however, that such hearings were held on less than the fifteen days' notice as required by section 2906, *supra*.

■ The ordinance was favorably voted at the annual town meeting on March 5, 1968. In order for a municipality to effectively adopt subdivision and area development ordinances, all of the provisions of Chapter 65 must be complied with. This includes the adoption of an official municipal plan as specified in section 2904, *supra*, on proper notice and hearing as required by section 2906, *supra*. In the absence of such compliance, the chancellor correctly ruled that the subdivision ordinance is of no force and effect.

Section III of the zoning ordinance of the Town of Milton provides in part:

A. To protect and conserve the value of the property of the Town of Milton and for other purposes of this Ordinance, the following shall be permitted and all portions of the Town . . . subject to the usual sanitary health requirements.

The chancellor determined in the findings of fact that the above quoted section of the zoning ordinance required that petitioner meet the health requirements of the Vermont State Department of Health as well as the water system standards of the Public Service Board of Vermont.

Petitioners challenge the above findings, together with that portion of the decree which reflects that such requirements have not been complied with by the petitioners.

■ Petitioners take the position that definite standards relating to sanitary health requirements have to appear in the ordinance which would have required approval by the state agencies mentioned in the findings of fact. In the absence of such specified conditions, it is urged that this portion of section III of the ordinance is void and of no effect.

On this basis, petitioners claim error in the decree which requires compliance with such health requirements by them, as a prerequisite to the issuance of building permits on lots 21, 22, 45 and 114 by the zoning administrative officer of the Town of Milton.

Under the provisions of 30 V.S.A. § 203, and related § 229, petitioner, Dana Corporation, is required to obtain a certificate of public good from the Public Service Board before it may supply water for domestic purposes. 18 V.S.A. § 1206 requires that plans for water systems be submitted to the Department of Health for approval. Section III of the zoning ordinance could only have had reference to the above statutory requirements.

We hold that it was proper for the chancellor to determine that "subject to the usual sanitary and health requirements" section III of the Milton Protective Zoning Ordinance required compliance with the above statutes. These stated requirements are the generally accepted and required sanitary and health requirements in Vermont.

Petitioners further contend that their residential subdivision constitutes a valid and preexisting and nonconforming use, and therefore, the subdivision ordinance is of no force and effect as to the residential development in question. In view of our holding that this ordinance is without validity, for reasons set forth in this opinion, there appears no necessity to pass upon this precise question.

*Decree affirmed.*