P.U.C., et al. *v.* General Waterworks Corporation, et al.

Argued December 13, 1972, before Judge ROGERS.

*Philip P. Kalodner,* with him *Susan M. Shanaman* and *Edward Munce,* for plaintiff, P.U.C.

*Peter Brown,* Deputy Attorney General, with him *J. Shane Creamer,* Attorney General, for plaintiff, Commonwealth of Pennsylvania.

*Charles B. Zwally,* with him *W. Russel Hoerner,* for defendant, General Waterworks Corporation.

OPINION BY JUDGE ROGERS, January 31, 1973:

We are required by Rule 63 of the Supreme Court to file a statement of our reasons for refusing a preliminary injunction in this matter.

The complaint of the Pennsylvania Public Utility Commission and the Commonwealth of Pennsylvania alleges that General Waterworks Corporation is a public utility in the State of Pennsylvania rendering steam heat service through the instrumentality of certain operating steam heat companies owned by it; that in February, 1972, General Waterworks Corporation caused the operating steam heat companies to seek approval of abandonment of service; that the applications for abandonment met opposition; that for the purpose of avoiding an order requiring General Waterworks Corporation to continue steam heat service, General Waterworks Corporation sold its shares in the subsidiary companies to another of the defendants, International Service Industries, Inc., and thereafter the applications for abandonment by the operating companies were withdrawn; that General Waterworks knew or should have known that International Service Industries, Inc. and the persons in control thereof were without experience to operate the steam heat companies, were financially irresponsible and had determined on a program to waste the assets of the operating companies; that General Waterworks received a $5,000,000 note as consideration for the conveyance of the companies which it knew was worthless; that following the sale, International Service Industries fraudulently spent and wasted the assets of the steam heat companies; that after the sale General Waterworks Corporation became aware of the mismanagement of the operating companies, and took no action against International Service Industries; that in November, 1972, the five operating steam heat companies filed petitions under Chapter XI of the

Bankruptcy Act in the United States District Court for the Eastern District of Pennsylvania and that Receivers were duly appointed; that ". . . current opinion available indicated a serious question as to whether any means of financing is available to the five operating steam heat companies": and that ". . . should such resources not become available to the Receivers, all heating services will be denied" to their customers.

The Complaint is in two counts. Count I asks for a preliminary and permanent injunction ". . . enjoining General Waterworks Corporation from abandoning or discontinuing steam heat service heretofore rendered by it through the five steam heat companies" and an order nullifying the sale by General Waterworks to International Service Industries. Count II asks for an accounting by General Waterworks Corporation for the expenditure of some $500,000 in net current assets owned by the five steam heating companies when those companies were sold by General Waterworks Corporation to International Service Industries, and for an accounting for the deterioration in condition of the operating properties of the five companies sold to International Service Industries. At this stage of the proceedings we are concerned only with the request for a preliminary injunction enjoining General Waterworks Corporation from abandoning or discontinuing steam heat service.

The plaintiffs' theory is, we conceive, that General Waterworks Corporation is a public utility as defined by the Public Utility Law, Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. §1101 et seq.; that General Waterworks, being a public utility, was required by subsection 202(e) of the Public Utility Law, 66 P.S. §1122(e), to obtain from the Public Utility Commission a certificate of public convenience as a condition to the lawful transfer of the capital stock of the op-

erating companies; that having failed to obtain such certificate, its transfer of said shares was a nullity; and that General Waterworks was therefore obliged to continue steam heat service.

The facts developed at the hearing can be summarized as follows: General Waterworks Corporation prior to March, 1972, owned 90 percent of the outstanding shares of capital stock of Pennsylvania Utilities Investment Corporation which in turn owned all outstanding shares of capital stock of the following named operating steam heat companies: Lewis Jones, Inc. (which serves Lower Merion Township, Montgomery County), Overbrook Steam Heat Company (which serves parts of the Overbrook section of Philadelphia), Scranton Steam Heat Company, and Wilkes-Barre Steam Heat Company. General Waterworks also owned all of the outstanding shares of capital stock of Longacre Park Heating Company, which serves the Borough of Yeadon in Delaware County. Those companies served about 6000 properties with steam heat during the winter season. Each of the operating companies had the same president who reported to the Vice-President of Operations of General Waterworks Management and Service Company, a subsidiary of General Waterworks Corporation. General Waterworks Management and Service Company provided financial, engineering and technical services to the five operating companies, subject to the ultimate control of General Waterworks Corporation. General Waterworks Corporation owned the shares of and controlled approximately 80 operating utilities throughout the United States, of which, prior to March, 1972, 18 water utility companies and the five steam heat companies here involved were located in Pennsylvania.

In February, 1972, the five operating steam heat companies filed petitions with the Public Utility Com-

mission to abandon service as of May or June of 1972, alleging that it was uneconomic to continue operations. It was uneconomic to operate these companies because of the high cost of the fuel oil used to produce the steam. After the petitions for abandonment were filed two offers were received for the capital stock of the five operating companies. One in the amount of $1,200,000 in cash was refused by General Waterworks Corporation because its officers believed that the offer was not in the best interest of the customers of the steam heat companies since the offerors had no plan to use other than oil as fuel. The other offer was that of one Arthur G. Crimmins and other individuals who proposed using solid waste as fuel for the boilers and who owned or had access to patents on incinerators or burners which the offerors thought would make the use of solid waste practical for this purpose. By this means the companies would have revenues for the disposal of solid waste and from customers of the steam heat companies. General Waterworks Corporation's personnel, after investigation, formed the opinion that the proposed process was feasible. General Waterworks thereupon sold the capital stock of Longacre Park Heating Company and of Pennsylvania Utilities Investment Corporation to International Service Industries, a corporation formed and owned by Crimmins and his associates. The consideration for the sale was International Service Industries' note in the amount of $5,000,000. At the time of the transfer the operating companies had a net working cash position of about $750,000 and this International Service Industries received. During 1971 the operating loss of all five companies was about $250,000, of which $220,000 was depreciation, or a net cash outflow of about $25,000. In the opinion of General Waterworks Corporation's officers and employes, the $750,000

was sufficient to carry the new company through the 1972-1973 heating season.

Shortly after acquiring the companies, International Service Industries and its principals obtained a loan of $300,000 from the First Pennsylvania Bank and a commitment from that institution to lend another $725,-000. In May, 1972, International Service Industries applied to General Waterworks Corporation for a loan. General Waterworks conducted an audit of the books and declined the loan because, among other reasons, it believed the principals were providing themselves excessive salaries and perquisites.

Hurricane Agnes raked Pennsylvania in June of 1972. It very seriously damaged the Wilkes-Barre plant. The Commonwealth of Pennsylvania lent International Service Corporation the sum of $2,500,000, of which $2,100,000 was drawn down by the company. Of this amount all except $650,000 was spent in rehabilitating the Wilkes-Barre plant. The Chapter XI Receivers had used and were proposing to continue to use this $650,000. There is litigation in the District Court, however, instituted by certain creditors of the steam heat companies. These creditors are enterprises who are constructing solid waste burners for International Service Industries who contend that the funds in question were escrowed for them upon delivery of the equipment. Another effect of Hurricane Agnes was that operating personnel from all of the companies were sent to Wilkes-Barre during the summer of 1972 to help in the rehabilitation of that plant. This contributed to a breakdown of services in the plants serving the other areas during the heating season of 1972.

At the time of the hearing herein, the Receivers had made application to the Public Utility Commission for substantial increases in rates which, if granted, would assist the Receivers in continuing services. Substantial

sums were spent by International Service Industries to install solid waste burners and some of that equipment is on order and due for early delivery.

As we have previously noted, we are asked to enjoin General Waterworks Corporation preliminarily from abandoning service. Although couched in prohibitory terms, the order requested would require the General Waterworks Corporation to operate the steam heat companies. It is, therefore, mandatory. A mandatory preliminary injunction will be granted only to prevent immediate and irreparable injury, and where the rights of the parties are entirely clear. *McMullin v. Wohlgemuth*, 444 Pa. 563, 281 A. 2d 836 (1971). In the chancellor's view not only were the rights of the plaintiffs far from clear, no great urgency was proved. Furthermore, the operating companies were and are being operated by Receivers appointed by the United States District Court. While we can concede that any financial support from General Waterworks would be welcomed by the Receivers, we do nevertheless, question the propriety of an order of this court directing someone other than the Receivers to operate the properties.

Our reasons, therefore, for refusing the preliminary injunction were as follows, not necessarily in the order of their importance in our consideration.

1. At the time of the hearing the steam heat companies were in operation under the direction and control of court-appointed Receivers. While there were financial projections produced in evidence which tended to show that at some future time the losses might be such that operations might cease, there was also evidence of a proposed rate increase and the present, although questioned, availability of about $650,000 in Commonwealth funds. The problem in Lower Merion Township which received local publicity was shown on the record to have resulted not from present lack of

funds but from the condemnation by the Department of Labor and Industry of one or more of the boilers at that plant. We concluded, therefore, that there was no such urgency as would compel the relief requested in the absence, for the reasons hereinafter set out, of a showing of the plaintiffs' clear right to any relief.

2. The fact that Receivers are in possession and are operating the plants under orders of the United States District Court raises a question of our jurisdiction to order some other person to operate the properties. The defendants filed preliminary objections raising the question of our jurisdiction of the subject matter before the hearing. These are founded on the exclusive jurisdiction of the Bankruptcy Court over the petitioner and its property provided by Federal Statute, 11 U.S.C. §711.

3. The plaintiffs rely on Section 202(e) of the Public Utility Law, 66 P.S. §1122(e), which requires a public utility to obtain a certificate of public conveyance for the transfer of "tangible or intangible property used or useful in the public service." Are shares of capital stock of a utility intangible property used or useful in the public service? The plaintiffs cite no authority and, indeed, the Commission's Counsel conceded that the plaintiffs' contention that they are has never before been advanced by the Commission. Furthermore, Section 202(f), 66 P.S. §1122(f), does require a certificate for any public utility to acquire five percentum or more of the voting capital stock of any corporation. This indicates that the Legislature knew how to legislate on the subject of transfer of capital stock if it intended to do so.

4. As noted, Section 202(e) applies in any event only to public utilities. Subsection 2(17)(a) of the Public Utility Law, 66 P.S. §1102(17)(a), defines a public utility as a person or corporation which produces or

furnishes gas, electricity or steam for the production of light, heat or power. General Waterworks Corporation did not do any of these things, unless we should, to use the popular phrase, "pierce the corporate veil." The plaintiffs have directed our attention to no Pennsylvania case involving a public utility holding that corporate separateness should be ignored and that the owner of public utility stock is the public utility. General Waterworks Corporation has directed our attention to *Sayre Land Company v. Pennsylvania Public Utility Commission,* 196 Pa. Superior Ct. 417, 175 A. 2d 307 (1961), holding the contrary. *Barium Steel Corporation v. Wiley,* 379 Pa. 38, 108 A. 2d 336 (1954), cited by the plaintiffs, indeed recognizes that a corporation is a distinct and separate entity irrespective of the persons who own its stock and that the fact that one person owns all of a corporate stock does not make him and the corporation one and the same person. That case does state, however, the principle that the courts can go behind the corporate entity where justice or public policy demand it and the rights of innocent parties are not prejudiced. On the record here made by the plaintiffs, consisting for the most part of the examination of a corporate officer of General Waterworks Corporation, we could not conclude that justice demands non-recognition of the separateness as corporations of General Waterworks and the operating companies. Plaintiffs would have had to convince us that the allegations of the complaint that General Waterworks Corporation knew or should have known that International Service Industries and its principals would be unable to manage the companies they purchased, that they were financially irresponsible, and that they had determined to waste the assets of the operating companies, were true. The evidence so far produced indicates that General Waterworks believed that its purchasers, using

their special knowledge of solid waste disposal, could make a go of the companies and that it had rejected the offer of a cash buyer whom it believed could not successfully operate these companies. Nor was General Waterworks alone in its belief in Crimmins and his associates. A banking institution lent $300,000 and offered an additional $725,000, from which it retreated only after the Chapter XI petitions were filed. Further, as we have earlier noted, some of the companies' troubles during the 1972-1973 heating season were the result of Hurricane Agnes.