# Committee To Save the Bishop's House, Sigma Nu Fraternity, Dr. Thomas Sachs, and Vermont Environmental Board v. Medical Center Hospital of Vermont, Inc.

### &

## In re Medical Center Hospital of Vermont, Inc.

[388 A.2d 827]

Nos. 311-77 & 336-77

Present: Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.

Opinion Filed June 6, 1978

H. *Thomas Andersen* of *Hoff, Wilson & Jenkins, P.C.,* Burlington, for Plaintiffs.

M. *Jerome Diamond,* Attorney General, and *Benson D. Scotch* and *Sam Perkins,* Assistant Attorneys General, Montpelier, for intervenor State.

*Spencer R. Knapp* of *Dinse, Allen & Erdmann,* Burlington, for *amicus curiae* President and Fellows of Middlebury College, Inc.

*Spencer R. Knapp* of *Dinse, Allen & Erdmann,* and *Paul D. Sheehey* (Of Counsel), Burlington, for Defendant.

**Daley, J.** This controversy began when the plaintiffs brought a complaint in the Chittenden Superior Court to enjoin both the demolition of a certain house located on Williams Street in Burlington, known as the Bishop's House, and the construction of a parking lot in its place. The court enjoined

the defendant Medical Center Hospital of Vermont, Inc., the owner of the Bishop's House, from proceeding with its construction plans until the applicability of Vermont's Environmental Law, Act 250, could be determined. An immediate hearing by the Vermont Environmental Board, admitted into this case as an intervenor, resulted in a declaratory ruling that Act 250 did apply. By consolidated appeal to this Court defendant challenges both the issuance of injunctive relief by the superior court and the finding of Act 250 applicability by the Environmental Board.

We will address first the defendant's challenge to the Environmental Board's action. The defendant disputes the Board's three conclusions of law in its Declaratory Ruling No. 85 which were as follows: first, the proposed demolition and construction constituted a development within the meaning of Act 250; secondly, the proposed construction involved a substantial change in an excepted development within the meaning of Act 250; and thirdly, the proposed demolition of the Bishop's House constituted the commencement of construction. Whatever the merits of defendant's contentions, we are nevertheless precluded from considering them due to the procedural defects in the proceedings before the Board.

The Board is governed in its disposition of petitions for declaratory rulings by Rule 4 of the Vermont Environmental Laws and Regulations, a rule promulgated by the Board pursuant to statutory authority. 3 V.S.A. § 808. Rule 4 requires that notice of a petition for declaratory ruling be given to all parties listed in 10 V.S.A. § 6084. These so-called Section 6084 parties include the municipality, the municipal planning commissions and the regional planning commission wherein the land is located. Where a petition is in the nature of a contested case, as it is here, Rule 4 also subjects that petition to those provisions of the Administrative Procedure Act governing contested cases, including 3 V.S.A. § 809 which outlines the detailed information to be included in the requisite notice.

▮ There is no evidence of record before this Court either that a petition was filed or that the Section 6084 parties received prior notice of the Board's hearing, let alone the kind of detailed notice contemplated by 3 V.S.A. § 809. Con-

siderations of due process entitle all interested parties to the best notice possible, or that notice which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *In Re Estate of Duval*, 133 Vt. 197, 199, 332 A.2d 802, 803 (1975). Whatever the allegations in oral argument to this Court of oral notice to the Section 6084 parties, such allegations are not a matter of record. In any event, under the circumstances of this case, oral notice does not constitute the best possible notice given the required written and detailed notice contemplated by 3 V.S.A. § 809 and 10 V.S.A. § 6084(a). An administrative agency such as the Environmental Board empowered to promulgate rules to govern its affairs is likewise bound by those rules which shall have the force and effect of law regardless of what it may perceive to be the necessity for immediate action. See *Vitarelli* v. *Seaton*, 359 U.S. 535, 546–47 (1959) (Frankfurter, J., concurring in part and dissenting in part); 1 K. Davis, Administrative Law Treatise § 5.03, at 299 (1958). By the Board's own standards, notice to the Section 6084 parties was at least inadequate if not nonexistent, and thus the Board was without jurisdiction to determine the rights of these parties in its declaration of the applicability of Act 250 to the Bishop's House project. Declaratory Ruling No. 85 is vacated accordingly.

Turning now to the issues raised by the superior court's grant of injunctive relief, the Amended Order of Preliminary Injunction dated October 26, 1977, prohibited the demolition of the Bishop's House until one of three events occurred.

1. The defendant received a declaratory ruling from the Environmental Board that an Act 250 permit was required.

2. The defendant received a ruling from the District Environmental Commission that no Act 250 permit was required.

3. The defendant received an Act 250 permit from the District Environmental Commission or Environmental Board.

The vacation of the Environmental Board's declaratory ruling leaves the order of injunctive relief in full effect by its own terms, and the claimed errors in the issuance of injunctive relief are properly before us.

The defendant was granted permission to pursue an interlocutory appeal from the injunction order pursuant to V.R.A.P. 5(b)(1) based on the following certified questions of law.

> 1. Does this Court or the District Environmental Commission and/or Environmental Board have primary jurisdiction to declare and determine whether this Defendant, on the facts elicited in these proceedings, is required to apply for and obtain an Act 250 permit?

> 2. Can this Court, after hearing plaintiffs' and intervenor's motion for a preliminary injunction, issue an order which does more than maintain the *status quo?*

> 3. Can a nongovernmental party be granted a preliminary injunction without being required to give security to the opposing party?

To understand the context in which the first certified question arises, it is necessary to refer to the original Order for Preliminary Injunction. In this order the superior court deferred to the District Environmental Commission or the Environmental Board on the question of whether Act 250 applied to the proposed Bishop's House project, claiming that primary jurisdiction for this determination was with the Commission and Board. In its brief appellant argues that it was error for the superior court to render injunctive relief without determining first whether there was merit to plaintiffs' claim that Act 250 was applicable. The first certified question presents in effect two issues: first, was the superior court obliged to determine the merits of plaintiffs' claim of Act 250 applicability; and secondly, does the doctrine of primary jurisdiction absolve the court of this requirement.

There is no question but that the superior court was required to make a determination of the applicability of Act 250 and that the injunctive relief rendered is fatally defective in this regard. It appears to this Court that the injunction

granted, although labeled a preliminary injunction in the court's order, was in the nature of a permanent injunction. This is not a situation where a trial court issues an injunction effective only until it can finally dispose of the case before it. The injunction granted here was the exact relief prayed for by the plaintiffs and represented the trial court's final disposition of the matter unless and until another tribunal, either the Environmental Commission or the Environmental Board, took up the issue of Act 250 applicability.

An injunction is generally regarded as an extraordinary remedy and will not be granted routinely unless the right to relief is clear. 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2942, at 368 (1973). Our rule requires that an order for injunctive relief set forth the reasons for its issuance. V.R.C.P. 65(d). Certainly the primary if not the only reason for enjoining defendant's conduct here was that the Bishop's House project constituted the kind of activity Act 250 was intended to regulate. Prior to issuing a permanent injunction, the court was required to hold an evidentiary hearing and to find the applicability of Act 250. Its failure to do so necessitates a dissolution of the injunction granted.

■ The remaining issue under the first certified question is whether the doctrine of primary jurisdiction in any way affected the requirement that the trial court make a finding of Act 250 applicability. This doctrine of administrative law is properly invoked as a guide to a court "in determining whether the court should refrain from exercising its jurisdiction until after an administrative agency has determined some question or some aspect of some question arising in the proceeding before the court." 3 K. Davis, supra, § 19.01, at 3. Instead of refraining from the exercise of its jurisdiction until it could benefit from administrative expertise, the trial court in the case before us proceeded to judgment without any determination of Act 250's applicability at all and then excused this lack of determination by invoking the doctrine of primary jurisdiction. This is a clear misapplication of the doctrine. Whatever its validity when properly applied, a question we do not reach, suffice it to say for purposes of this opinion that the doctrine does not excuse the failure to make

determinations otherwise necessary to the grant of injunctive relief.

Although the lack of determination of Act 250 applicability is sufficient to invalidate the trial court's grant of injunctive relief, we will comment on the issues raised by the remaining two certified questions because of the likelihood of their recurrence should the parties choose to seek a rehearing on this matter.

The second certified question raises the issue of whether the trial court's granting of injunctive relief was mandatory rather than prohibitive in nature, which according to defendant would then require a showing that plaintiffs' right to relief was entirely clear. We are unpersuaded that the injunction was mandatory. To comply with the injunction and avoid a contempt citation the defendant needed only to refrain from demolition of the Bishop's House. That the injunction had "the effect" of bringing the defendant before the Board does not make the injunction mandatory. The defendant was compelled to go before the Board only by its desire to engage in the enjoined conduct and not by the terms of the injunction.

In any event the significance of this distinction, if there be any, see 11 C. Wright & A. Miller, *supra*, § 2942, at 377, is not apparent in the present case. Since we have held the injunctive relief granted by the trial court to have been in the nature of a permanent injunction, we have held accordingly that the trial court was bound to determine Act 250 applicability in order to establish that plaintiff had a clear right to relief and to justify thereby the use of such an extraordinary remedy. According to defendant, a mandatory injunction requires a similar finding that plaintiffs' rights be entirely clear. See *Pennsylvania Public Utility Commission* v. *General Waterworks Corp.*, 7 Pa. Commw. Ct. 352, 300 A.2d 280, 283 (1973). The position taken by the defendant is therefore indistinguishable in effect from the position taken by this Court.

The third certified question raises the propriety of the trial court's waiver of security otherwise required of the party in whose favor injunctive relief is granted. V.R.C.P. 65(c). Our Rule provides that "for good cause shown and recited in the order, the court may waive the giving of security." *Id.* The extent of the trial court's recital of good cause in its

order is as follows: "Requesting that the defendant be enjoined until it complies with the law, the Court finds to be good cause for waiver of security by the plaintiffs. V.R.C.P. 65(c)."

Plaintiffs contend that the particular circumstances of this case, specifically that they are indigent and are litigating matters involving environmental issues of public interest, constitute good cause under the rule and justify the court's waiver of security. The cases on which plaintiffs rely, however, name governmental agencies as defendants and are based on the policy that any party adversely affected by government action has a right regardless of his financial situation to seek judicial review of that action. See, e.g., *Bass* v. *Richardson,* 338 F. Supp. 478, 491 (S.D.N.Y. 1971); 11 C. Wright & A. Miller, *supra,* § 2954, at 528–32. The instant case involving a private defendant is therefore distinguished.

We hold the waiver of security by the trial court to have been error. The record is devoid of any facts which could constitute a good cause basis for waiver. Furthermore, even assuming arguendo the existence of these facts, the court was required by our Rule to recite the grounds for its waiver of security in the order. This it failed to do.

*In Docket No. 336-77, Declaratory Ruling No. 85 of the Vermont Environmental Board is vacated.*

*In Docket No. 311-77, the injunction granted by the Chittenden Superior Court in its Amended Order dated October 26, 1977, is dissolved and the cause remanded for further proceedings not inconsistent with this opinion.*