## C.V. Landfill, Inc. v. Environmental Board

[610 A.2d 145]

No. 91-012

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 8, 1992

*John B. Kassel* and *Martin K. Miller* of *Miller, Eggleston & Rosenberg, Ltd.*, Burlington, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *Conrad W. Smith*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Morse, J.** Plaintiff C.V. Landfill, Inc. appeals the Washington Superior Court's dismissal of its request for a declaratory judgment that Act 250 did not apply to its landfill operation. C.V. challenges the court's invocation of discretion to dismiss the

complaint. C.V. claims that the court did not have discretion under the declaratory judgment provision of the Administrative Procedure Act (APA), 3 V.S.A. § 807, and the Declaratory Judgments Act (DJA), 12 V.S.A. §§ 4711–4725, to refuse to reach the merits. Alternatively, C.V. claims that if such discretion existed, it was abused. C.V. also appeals the court's dismissal of its request to enjoin Act 250 proceedings against it.

C.V. and its predecessor operated a landfill in East Montpelier since the mid-1960's. The landfill was a pre-existing development under 10 V.S.A. ch. 151 (Act 250), because it was in operation before June 1, 1970. Therefore, it was not required to obtain an Act 250 permit, absent a substantial change. 10 V.S.A. § 6081(b).

Under certification by the Agency of Natural Resources (ANR) aimed at reducing potential pollution from its landfill operation, C.V. was required to eliminate the flow of surface water and leachate through an existing culvert system. C.V. implemented the ANR requirement by capping off the old system, extending an existing ditch, and installing subsurface tanks, a pumphouse, and pipes, but made no change in accepting and processing waste. In March 1990, the local District Environmental Commission Coordinator issued a written advisory opinion indicating that C.V.'s surface water and leachate diversion required an Act 250 permit because the project constituted a substantial change under Environmental Board Rule 2(G). The opinion also advised that C.V. could appeal to the Environmental Board and that failure to do so or to apply for a permit might trigger an Act 250 enforcement proceeding. C.V. did neither and instead filed suit against the Board in Washington Superior Court.

In its complaint, C.V. claimed that its efforts to meet ANR requirements did not constitute a substantial change within the meaning of Rule 2(G) and therefore, as a preexisting landfill, it was exempt from obtaining an Act 250 permit. The trial court dismissed C.V.'s action on the basis of the doctrine of "primary jurisdiction" because, in its view, the Environmental Board was the more appropriate forum to decide the issue.

## I.

■ Under the doctrine of "primary jurisdiction," courts

may refrain from exercising jurisdiction when an alternative tribunal with expertise in the subject matter is available to decide the dispute. See generally 4 K. Davis, Administrative Law Treatise §§ 22:1–22:2 (2d ed. 1983) (disposition of the case by administrative agency charged by statute to adjudicate disputes in a particular specialty promotes utilization of expertise and uniformity of interpretation); see also *Smith v. Highway Board*, 117 Vt. 343, 349, 91 A.2d 805, 809 (1952) (courts ordinarily do not grant relief prior to an agency decision where the agency has primary jurisdiction).

Environmental Board Rule 3(C) provides that

> An advisory opinion of a district coordinator may be appealed to the executive officer of the board. An advisory opinion of the executive officer may be appealed to the environmental board by means of a petition for a declaratory ruling.

While the DJA and § 807 of the APA allow parties to seek a declaratory judgment in superior court, Rule 3(C) provides an alternative administrative remedy.

 Our cases underscore the importance of prior adjudication by administrative bodies, and we conclude that the primary jurisdiction doctrine was particularly suited to this case. In *In re State Aid Highway No. 1*, 133 Vt. 4, 8, 328 A.2d 667, 669 (1974), we stated that "proceedings under various declaratory judgment statutes cannot be substituted for adequate and available remedies of review . . . by administrative tribunals." Courts must, then, consider at the outset whether another body is better suited to resolve the issues before it. *I.C.C. v. Maine Central R.R.*, 505 F.2d 590, 594 (2d Cir. 1974) (doctrine of primary jurisdiction applies where a claim is originally cognizable in the courts, and comes into play when resolution of the issues under regulatory scheme requires the special competence of an administrative body). See also *Committee to Save the Bishop's House v. Medical Center Hosp. of Vermont, Inc.*, 136 Vt. 213, 218, 388 A.2d 827, 830 (1978) (when properly applied, doctrine of primary jurisdiction serves as guide in determining whether court should "'refrain from exercising its jurisdiction until after an administrative agency'" has considered the issue) (quoting 3 K. Davis, Administrative Law Treatise § 19.01, at 3 (1958)).

The DJA, enacted in 1931, was designed to provide litigants "at an early stage of the controversy a right to petition for relief not heretofore possessed." *Gifford Memorial Hospital v. Town of Randolph*, 119 Vt. 66, 70, 118 A.2d 480, 483 (1955). The Act provides that a superior court "shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed." 12 V.S.A. § 4711.

Section 807 of the APA was enacted later, in 1968. It gives the Washington Superior Court jurisdiction to determine the applicability of an agency rule. Under § 807,

> [t]he validity or applicability of a rule may be determined in an action for declaratory judgment in the Washington superior court if it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff.

The APA, invoked by C.V. in this case, is limited to issues of administrative law, serving as the vehicle enabling a litigant to seek a declaratory judgment on the validity or applicability of any agency rule in the Washington Superior Court. C.V. maintains that the DJA, made applicable in this case by § 807, significantly limits the court's discretion to dismiss. In our view, the court's authority was not so limited as to deny it the discretion to dismiss C.V.'s complaint.

C.V. relies on 12 V.S.A. § 4716 of the DJA (entitled "Refusal to enter judgment; discretion of court"), which states that "[t]he court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." C.V. argues from this language that discretion to dismiss exists only when a declaratory ruling, if given, would not resolve the controversy. By implication, it maintains, no discretion exists in any other circumstance.

We refuse to impose upon the Washington Superior Court the obligation to retain jurisdiction based on this limited reading of the DJA urged by C.V. Other cases of this Court, which C.V. cites in support of this reading, are distinguishable because they are based solely on the DJA and do not account for the administrative statutory scheme or the doctrine of primary jurisdiction. See, e.g., *Neal v. Brockway*, 136 Vt. 119, 121–22, 385

A.2d 1069, 1070 (1978) (error for court to dismiss, under the DJA, request to declare parties' rights to property jointly held because "bare existence of another adequate remedy . . . provides an insufficient basis" for a dismissal); *Commercial Ins. Co. v. Papandrea*, 121 Vt. 386, 392, 159 A.2d 333, 337 (1960) (court should not have dismissed request for declaration of insurer's duty to defend where the decree would have the effect of "clarifying the legal relations of the parties or . . . terminat[ing] the uncertainty and insecurity of the controversy").

The Legislature's instruction that a declaratory action "may" be dismissed when complete relief cannot be granted to resolve the controversy does not mean dismissal is improper in *all* other circumstances. See, e.g., V.R.C.P. 12(b) (listing defenses, including lack of personal jurisdiction, improper forum and other deficiencies, as proper grounds for dismissal by a court). In the context of a "declaratory judgment," the "terminate the uncertainty" language in § 4716 reflects our general jurisdictional prerequisite that a court exercise its power to resolve only real disputes—"cases and controversies"—as opposed to issuing advisory or hypothetical opinions. *Gifford Memorial Hospital v. Town of Randolph*, 119 Vt. at 70, 118 A.2d at 483.

C.V.'s construction of the DJA according to the maxim of expressio unius est exclusio alterius—the expression of one thing is the exclusion of another—does not help here. Were we to carry C.V.'s argument to its logical extreme, none of the traditional and well-established grounds to dismiss a lawsuit would be available by simply labeling the action one for a declaratory judgment. Canons of construction such as the one used by plaintiff "are routinely discarded when they do not further a statute's remedial purposes." *Clymer v. Webster*, 156 Vt. 614, 625, 596 A.2d 905, 912 (1991).

■ ■ Because the purpose of the DJA is to stabilize and quiet relations between parties, *Price v. Rowell*, 121 Vt. 393, 399, 159 A.2d 622, 626 (1960), the court's actions were justified. As it is a remedial statute, we will construe the DJA liberally to effectuate these goals. *Neal*, 136 Vt. at 121, 385 A.2d at 1070. Surely a court's invocation of discretion to dismiss is proper where, as here, it did so in order to allow another tribunal, better suited to apply the Act 250 criteria, to resolve the dispute. C.V.'s view that, once jurisdiction is invoked under the DJA, the

exclusive forum to decide the dispute resides in the superior court is inflexible and frustrates the legislative scheme placing administrative decision-making where subject-matter expertise resides.

## II.

Alternatively, C.V. argues that even if there was discretion to dismiss under § 807, it was abused because the issues before the superior court were legal questions better addressed by a court than the administrative agency.

First, the "legal question" raised was actually one mixed in law and fact. In retaining jurisdiction, the court would have had to decide if plaintiff's modifications to its landfill site constituted a "substantial change" under 10 V.S.A. § 6086 triggering Act 250 permit requirements. This task would have entailed an application of the facts to the relevant legal authority; hence, both factual and legal questions were implicated.

In addition, these are issues so intertwined with environmental law that, under the doctrine of primary jurisdiction previously discussed, the body charged with interpreting Act 250 is the most appropriate tribunal to interpret them. We give great weight to the Environmental Board's expertise in these areas. See, e.g., *In re Agency of Transportation*, 157 Vt. 203, 208, 596 A.2d 358, 360 (1991) (Act 250 gives "primacy over, without preemption of, ancillary permit and approval processes").

Finally, C.V. is not challenging the validity of the statute. If this were the posture of the case, a court might be the more appropriate tribunal. See *Flanders Lumber & Building Supply Co. v. Town of Milton*, 128 Vt. 38, 44, 258 A.2d 804, 808 (1969) (when issue is whether particular law is valid, "it is undoubtedly judicial economy and wisdom to decide the issue by declaratory judgment before the administrative channel has been invoked or exhausted"). In sum, the court did not abuse its discretion to defer to another, more appropriate, route to resolve this dispute.

## III.

C.V.'s final point is that the court's dismissal of its request for injunctive relief was premature because the court so ruled before C.V. submitted supporting affidavits or offers of proof.

■■ An injunction "will not be granted routinely unless the right to relief is clear." *Vermont Division of State Buildings v. Town of Castleton Bd. of Adjustment*, 138 Vt. 250, 256, 415 A.2d 188, 193 (1980). Because the court deferred to another tribunal and dismissed the action, it no longer had authority to issue an injunction. For the court in this case to grant injunctive relief would have amounted to an implicit countermand of its invocation of the doctrine of primary jurisdiction. See *Committee to Save the Bishop's House*, 136 Vt. at 218, 388 A.2d at 830 (when court, under the doctrine of primary jurisdiction, chose not to determine the applicability of Act 250, the court's subsequent issuance of an injunction was erroneous). If the court here were to issue an injunction, it would have been required first to determine the applicability of Act 250, which it declined to do. Consequently, it correctly refused to enjoin Act 250 enforcement proceedings.

*Affirmed.*