## Philip and Linda Drumheller v. Shelburne Zoning Board of Adjustment

[586 A.2d 1150]

No. 88-203

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed December 28, 1990

*James W. Coffrin* of *Pierson, Affolter & Wadhams,* Burlington, for Plaintiffs-Appellants.

*Steven F. Stitzel* of *McNeil, Murray & Sorrell, Inc.,* Burlington, for Defendant-Appellee.

**Dooley, J.** Appellants Philip and Linda Drumheller sought a declaratory ruling that a part of their property should be considered to be a separate lot for the purposes of the Town of Shelburne zoning and subdivision regulations, even though its area is less than allowed by the zoning ordinance for the district in which it lies. The Chittenden Superior Court ruled that all of appellants' property must be considered to be a single lot, and therefore that a part could not be conveyed free of local regulation and permit requirements. We affirm.

The Browns, appellants' predecessors in title, acquired a 94-acre parcel of land in 1940, including all the property now in dispute. In 1957 the Browns conveyed a small parcel of 1.3 acres (56,628 square feet) with a camp residence on it to the Wyeths, who conveyed it back to the Browns in 1961.[1] In 1987 the Browns conveyed to appellants 8.15 acres (355,014 square feet) of land, with two residences, including what had been the Wyeth lot and camp.

The Town of Shelburne first adopted zoning bylaws in 1963. In 1971, a minimum lot size of 100,000 square feet was established for the district in which the subject property is located.[2] The zoning bylaws applicable to this case were adopted in 1985, effective January 1986, and continued the requirement that lots in this district (Residential II) be a minimum of 100,000 square feet in area.

In March of 1987, Philip Drumheller requested a declaratory ruling from the Shelburne Zoning Administrator on whether

---

[1] The Wyeth lot was described as containing 1.1 acres in 1957, but was redrawn in 1987 to contain 1.3 acres. The parties have agreed to treat the 1987 lot as the same parcel of land as that reacquired by the Browns in 1961. This difference in parcel size is, therefore, not relevant to our decision.

[2] In 1971, § 12(c)(1) of the Town's zoning bylaws provided:

Beginning with the adoption of this provision (March 11, 1971), where either public water or public sewer are not available the minimum lot size in any district shall be not less than 100,000 square feet, and each lot shall have a minimum frontage of 200 feet. The requirements of this provision shall not apply to any lot held in single and separate ownership as of the effective date of this provision.

the Wyeth lot continued as a lot separate from its surroundings. He noted that it had a separate deed and plat recorded in the town clerk's office and that it had been taxed separately from the surrounding land. When the zoning administrator answered that the Wyeth lot was no longer a separate lot but had merged into the surrounding land also owned by the Browns, Philip Drumheller appealed to the Shelburne Zoning Board. While the appeal was pending, appellants bought the property. The board ruled that the 1.3-acre lot "is not a preexisting lot within the meaning of Section 1490.3" of the zoning ordinance and sustained the position of the zoning administrator. In its findings, the board stated that since the 1.3-acre lot was not a preexisting lot, "a conveyance of this lot into separate ownership would violate the Shelburne Zoning Regulations presently in effect."

The case went from the zoning board to superior court, where appellants sought a declaratory judgement "that [the Wyeth] parcel . . . has not been merged into [the remaining] parcel . . . and that it may be conveyed separate and apart from [the remaining land] . . . ." The case was submitted on cross-motions for summary judgment, and the superior court granted the Town's motion, holding that the parcels had merged as of the effective date of the 1971 ordinance. This appeal followed.

This case is in an unusual procedural posture because the issue is about the subdivision of land, but it has been dealt with in the context of a zoning declaratory ruling rather than a request for a permit to subdivide the property.[3] Partially as a result of the procedural posture, many of the arguments have centered on the applicability of § 1490.3 of the Shelburne Zoning Ordinance which provides:

Existing Small Lots.

Any lot in individual and separate and non-affiliated ownership from surrounding properties in existence on the ef-

---

[3] In view of our conclusion, *infra*, that the subdivision of land is controlled by the zoning ordinance and requires a zoning permit, the procedural posture is not determinative. If the issue first arose in a request for a subdivision permit, the result would be the same because the planning commission, which acts on subdivision permit requests, could not approve a subdivision that would leave one lot in violation of the minimum lot size requirement of the zoning ordinance. See *Wright v. Preseault*, 131 Vt. 403, 410, 306 A.2d 673, 678 (1973) (decision denying motion to reargue).

> fective date of these regulations, may be developed for the purposes permitted in the district in which it is located, even though not conforming to minimum lot size requirements, if such lot is not less than ⅛th acre in area with a minimum width or depth dimension of forty (40) feet.

The ordinance provision is identical to the relevant portion of the applicable statute and is required to be included in every zoning ordinance in the state. 24 V.S.A. § 4406(1). Appellants point out that the existing small lot provision regulates development and argue that there is no proposal here to develop the Wyeth lot since it is already built upon, despite the proposal to subdivide.

We cannot accept appellants' narrow construction of the applicable provisions of the zoning ordinance. Appellants' argument is based almost entirely on the use of the phrase "may be developed" in the existing small lot section of the ordinance. From the wording of the ordinance, appellants construe the section to restrict development of undersized lots but not to restrict the creation of a small lot that has already been developed. Appellants' argument involves an incomplete analysis of the relevant statutory and ordinance sections that misconstrues the use of the term "development" in the ordinance.

First, appellants' argument is inconsistent with the minimum lot area requirement of the ordinance. For the district containing the land in question, the minimum lot size is "100,000 square feet for single family dwellings." Shelburne Zoning Ordinance § 730.1(a). Section 1490.3 creates a limited exception to the minimum lot size requirement for certain undersized lots in existence on the effective date of the "regulations." The parties appear to agree that the regulations referred to are those imposing the minimum size requirement and that the Wyeth lot did not meet the requirements of the exception.

■ The failure to meet the exception is of significance only if the sale of the Wyeth lot is itself an act subject to the zoning ordinance. Under the statute, the purpose of a zoning ordinance is to "permit, prohibit, restrict, regulate, and determine land development." 24 V.S.A. § 4401(b)(1). The term "land development" is specifically defined to include not only the erecting of structures on the land but also the "division of a parcel into two

or more parcels." 24 V.S.A. § 4303(3). Thus, the act of subdividing land is itself a form of development and brings the landowner under the authority of the zoning ordinance.

■ The broad ambit of zoning power under the statute undercuts appellants' argument that the existing small lot section to the ordinance is irrelevant to this case because appellants do not propose to "develop" the Wyeth lot. In fact, the selling of part of appellants' land is by definition developing that land under the statute. Thus, the exception to the minimum lot size requirement is relevant to appellants' circumstances, and appellants fail to fit within it. Since they fail to fit within it, they are subject to the minimum lot size requirement of the ordinance and violate the ordinance by creating and selling an undersized lot.

■■ In reaching this construction of the relevant provisions, we think it significant that the existing small lot provision is contained in the zoning enabling act in virtually identical words. See 24 V.S.A. § 4406(1). We must read provisions that are part of the same statutory scheme in pari materia. See *Blundon v. Town of Stamford*, 154 Vt. 227, 230, 576 A.2d 437, 439 (1990). Thus, we construe the provision describing the zoning power and the provision on existing small lots as using the same concept of development. Reading them together, we take the existing small lot provision, and its requirement of "individual and separate and non-affiliated ownership" as defining when land may be considered a separate parcel for purposes of the definition of "land development" in § 4303(3).

■■ Second, the construction we have reached is most consistent with the intent and purpose of the legislature. See *Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 50, 527 A.2d 227, 228 (1986). Only by examining legislative intent "can an interpretation be carried out that avoids unreasonable or unjust results, or that avoids dilution or defeat of legislative objectives." *Id.* Lots that are smaller than the minimum lot size requirements are nonconforming uses, allowed only because the use preexists the applicable zoning requirement. A goal of zoning is to phase out such uses. See *Hinsdale v. Village of Essex Jct.*, 153 Vt. 618, 626, 572 A.2d 925, 930 (1990).

Appellants' interpretation would not only frustrate the phasing out of a nonconforming use, it would allow the re-creation of

such a use after it was extinguished. Further, it would distinguish a situation where the building construction precedes the land subdivision from a situation where the subdivision occurs first, even though the result—an undersized lot with a home on it—is the same in either circumstance. Thus, appellants ask us to create a distinction with no difference in terms of the purposes the zoning ordinance is intended to implement. Finally, appellants' interpretation would allow for subdivision with no zoning review despite the fact that the trial court found that appellants could apparently divide the land in such a way that both lots comply with the zoning ordinance. That circumstance is a demonstration that it is better to evaluate the relative merits of the subdivision under variance hardship criteria. See 3 E. Ziegler, Rathkopf's The Law of Zoning and Planning § 32.09, at 32–21 (1990) (the customary means of obtaining a zoning permit for a lot that is nonconforming with respect to area is to seek a variance).[4]

■ In adopting a bright line interpretation of the ordinance and statutes, we have necessarily rejected arguments appellants have made to demonstrate why the Wyeth lot should be treated separately regardless of the general rule. For example, we do not attach significance to the fact that the Town has treated the Brown property as separate lots for tax purposes including sending separate bills and showing them as separate on the tax maps.[5] Even in states that consider the merger of

---

[4] Our decision in *In re Fecteau*, 149 Vt. 319, 320, 543 A.2d 693, 694 (1988), suggests that a variance from a minimum lot size requirement is never appropriate for a lot that does not meet the existing small lot standards of 24 V.S.A. § 4406(1). This case is different, however, because the presence of two houses on the property makes the usage nonconforming. Subdividing the land under a variance might in fact reduce the extent of nonconformity. Of course, the applicant would have to meet the strict requirements of 24 V.S.A. § 4468(a). See *In re McDonald's Corp.*, 151 Vt. 346, 560 A.2d 362 (1989).

[5] We have also not considered evidence submitted by the Town that in 1976 the Browns sought and received a subdivision permit that allowed them to sell part of their land and that the application showed all the remainder of their land including the portion once owned by the Wyeths as one parcel. Thus, the subdivision plan approved and permitted by the Town shows the Brown property as one parcel despite the separate treatment of the Wyeth land in the tax records. This kind of evidence has been used by courts in other states to conclude that separate parcels in common ownership have been merged. See, e.g., *Parks v. Board of County Comm'rs of Tillamook County*, 11 Or. App. 177, 194–95, 501 P.2d 85, 94 (1972).

preexisting lots a question of fact, such circumstances have not been considered determinative. See *Smith v. Zoning Bd. of Review of Town of Westerly,* 111 R.I. 359, 368, 302 A.2d 776, 781 (1973). No doubt this separate treatment occurred when the Browns first sold the Wyeth lot and was not discontinued when the property was transferred back to the Browns. In any event, it is entirely proper for a town to treat property as a single lot for one purpose and as more than one lot for another purpose, given the different reasons for the classifications. Indeed, that disparate treatment may be a necessary result of the differing statutory mandates on the town.

Similarly, we do not believe that the fact that the presence of two homes on the Brown property involves a nonconforming use of that property is determinative. Nothing suggests that appellants are entitled to an automatic conversion from one form of nonconforming use (two houses on a single lot) to another (undersized lot); indeed, the ordinance generally prohibits such a trade. See Shelburne Zoning Ordinance § 1420.1(1). In any event, we are dealing with a case where appellants are able to eliminate all nonconformity.

*Affirmed.*