## In re Appeal of Stuart Richards

[819 A.2d 676]

No. 01-086

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed September 20, 2002
Motion for Reargument Granted December 24, 2002

*John D. Hansen,* Rutland, for Appellant.

*John C. Candon* of *Miller & Candon, LLC*, Norwich, for Appellee Nowicki.

*Gary R. Wieland*, White River Junction, for Appellee Town of Norwich.

**Johnson, J.** Appellant Stuart Richards appeals from an order of the Environmental Court affirming the decision of the Zoning Board of Adjustment of the Town of Norwich to grant a permit for appellee Paul Nowicki to construct a single-family residence on a parcel of land that abuts appellant's property. Appellant contends that the parcel had merged with another parcel owned by Nowicki, which already contains a single-family residence, and the combined lot does not meet the minimum lot size for the second home. The court held that the parcels had not merged and that each was a pre-existing use that Nowicki was entitled to develop. Appellant also claims that the court erred when it approved a permit for Nowicki's septic system because the court made erroneous findings. We reverse the court's determination that the parcels had not merged, but affirm, on different grounds, its holding that the septic system was properly permitted.

This case arose from a long standing dispute between the parties over their neighboring properties. Nowicki's property in Norwich originated as two separate, but adjoining parcels of land. Parcel one is 14,950 square feet and parcel two is 24,000 square feet. Alastair MacDonald acquired parcel one in 1950. It contained a single-family residence that had been built approximately one hundred years earlier. MacDonald jointly owned parcel two with Caryl Smith. Smith also owned appellant's property, which is behind and adjoining the two parcels. In 1967, MacDonald and Smith conveyed parcel two to MacDonald alone, and conveyed to Smith and her successors a right of way on parcel two to serve as a driveway for Smith's property, and a right of first refusal for any future sale of parcel two. Thus, at the completion of these transactions, MacDonald owned both parcel one and two, bisected by the driveway to Smith's property, and Smith owned the setback property with a right of way, that is the driveway. Appellant currently owns Smith's property and is her successor. The two MacDonald parcels have been in common ownership ever since 1967. In 1996, Nowicki acquired title to both parcel one and parcel two.

The Town of Norwich first enacted zoning regulations in 1971. Those regulations placed parcel one and two within a residential district in which the minimum lot size was 8,000 square feet. Under these regulations, both lots were conforming lots. In 1981, the town's zoning regulations were

amended, increasing the minimum lot size in the relevant residential district to 20,000 square feet. The minimum lot size for the district in question has not changed since. Thus, in 1981, parcel one became a nonconforming, pre-existing lot that was developed with an existing house. Parcel two was a conforming lot for single-family residential use that was undeveloped.

In 1997, Nowicki applied for, and received, a permit to renovate the house located on parcel one, within the existing footprint. At that time no question was raised as to lot size because the combined size of the two parcels was 38,950 square feet, well in excess of the minimum lot size. Nowicki next sought a permit to develop a residence on parcel two. That permit is the subject of this litigation. Before the Environmental Court, the principal issue in dispute was whether the two parcels had merged as a result of Vermont's small lot statute, 24 V.S.A. § 4406(1). Appellant argued that the two parcels had merged and therefore should be treated as a single 38,950 square foot lot, in which case a second residence would violate the minimum lot requirements. In seeking the permit, Nowicki argued that the parcels had not merged and should be treated independently. According to Nowicki, parcel one remains an existing nonconforming lot, protected by § 4406(1), and parcel two is a conforming lot of 24,000 square feet that meets the minimum lot size requirement. On joint motions for summary judgment, the court ruled in favor of Nowicki. Citing *Lubinsky v. Fair Haven Zoning Board*, 148 Vt. 47, 50, 527 A.2d 227, 228 (1986), the court held that § 4406(1) did not apply to these parcels because that section does not apply to undeveloped lots of sufficient size such as parcel two or developed lots of insufficient size such as parcel one. Because the state statute regulating small lots does not apply, the court held that the parcels had not merged, and that the town's local regulations did not require that the properties merge. Therefore, the court granted the permit.

The court also addressed the issue of whether the septic system Nowicki designed and permitted for installation on parcel two will violate the town's regulations on "objectionable odor." The court held that as designed, the sewage system would not release "objectionable odor," and that if at some point the system did fail then Nowicki assumes the risk that residential use of the building may be discontinued. This appeal followed.

## I.

On appeal, the parties dispute whether 24 V.S.A. § 4406(1) permits parcel one to be treated as an existing small lot thus allowing parcel two to

be developed as a separate, conforming lot, or whether the parcels have merged because parcel one does not qualify as an existing small lot under § 4406(1). At the center of this issue is whether the court was correct in determining that *Lubinsky* controls the inquiry into whether the parcels merged. Appellant contends that *Drumheller v. Shelburne Zoning Board of Adjustment*, 155 Vt. 524, 586 A.2d 1150 (1990), controls this case and that § 4406(1), as it was applied in *Drumheller*, does not allow the permitted development because parcel one is not an existing small lot and thus the parcels have merged. Nowicki responds that even if § 4406(1) does not protect parcel one, the parcels have not merged because the town zoning ordinance is less restrictive on the development of small lots than the state statute. Nowicki argues that the state statute merely sets a protective floor for property owners, and that the town may enact a regulation that is more protective of property owners.

The first issue to be decided is whether § 4406(1) applies to the property at issue. That statute, at the time the permit was sought, stated:

> No municipality may adopt zoning regulations which do not provide for the following:
>
> (1) Existing small lots. Any lot in individual and separate and non-affiliated ownership from surrounding properties in existence on the effective date of any zoning regulation, including an interim zoning regulation, may be developed for the purposes permitted in the district in which it is located, even though not conforming to minimum lot size requirements, if such lot is not less than one-eighth acre in area with a minimum width or depth dimension of forty feet.

24 V.S.A. § 4406 (1992).[1] The Environmental Court held that this statute does not apply to Nowicki's parcels because the provisions apply only to undeveloped undersized lots, a definition into which neither parcel fits. To support this conclusion, the trial court relied on language from *Lubinsky* that states "the aim [of § 4406(1)] is to allow the stated use of lots already existing and not yet developed or built upon." *Lubinsky*, 148 Vt. at 50, 527 A.2d at 228. In *Lubinsky*, the property owners were seeking to convert a house into a two family dwelling on a lot that did not meet the town's minimum size requirement. We held that although the lot fell within the statutory definition of an existing small lot under § 4406(1), that statute could not be interpreted to allow for unlimited development of a small lot.

---

[1] The statute was later amended in 1998, but we analyze the case under the earlier version because that was the statute in effect at the time of the permit application.

420

*Id.* at 50-51, 527 A.2d at 228-29. Rather, we held that the statute was a "limited grandfather clause allowing for limited development . . . that is not seen as unduly disruptive of the desired ends of zoning." *Id.* at 51, 527 A.2d at 229. The case does not involve two contiguous parcels and is thus not relevant to the current case. Furthermore, the language from *Lubinsky* relied upon by the Environmental Court to support its position is plainly obiter dicta. In fact, in *Lubinsky,* we were clear that our discussion of the purpose of § 4406(1) "is not the issue presented to us nor the question argued." 148 Vt. at 50, 527 A.2d at 228. Therefore, the court's reliance on *Lubinsky* was error.

The proper framework for analyzing this case was laid out in *Drumheller*. In that case, the appellants sought to sell a parcel of their property that did not meet the minimum lot size requirements, creating two lots, one conforming, and the other nonconforming but permitted as an existing small lot under § 4406(1). The appellants relied on the fact that at one point in the property's history, the small parcel had been separately owned. Similar to this case, however, the appellants in *Drumheller* purchased the parcels from a unified owner, and after the adoption of minimum lot size regulations. 155 Vt. at 526, 586 A.2d at 1150-51. We held that because the small parcel was not held in individual and separated ownership when the minimum lot size restrictions were enacted, as required by § 4406(1), the small lot could not be developed. *Id.* at 529, 586 A.2d at 1152. We stated that "[l]ots that are smaller than the minimum lot size requirements are nonconforming uses, allowed only because the use preexists the applicable zoning requirement. A goal of zoning is to phase out such uses." *Id.* We prohibited the proposed use because permitting it "would allow the re-creation of such a use after it was extinguished." *Id.* at 529-30, 586 A.2d at 1152.

Applying *Drumheller* to this case, we conclude that Nowicki's two parcels had already merged when he purchased the property in 1996. For Nowicki to successfully invoke the small lot exemption of § 4406(1), he would have to show that the parcels were held in "individual and separate and non-affiliated ownership" when the 20,000 square foot minimum lot size regulations were enacted in 1981. *In re Weeks,* 167 Vt. 551, 555-56, 712 A.2d 907, 909 (1998).[2] Due to the unified ownership of the parcels in

[2] The amended version of § 4406(1) appears to respond to our holding in *Weeks* by requiring lots that come under common ownership subsequent to the enactment of zoning regulations "shall be deemed merged with the contiguous lot for purposes of this chapter." 24 V.S.A. § 4406(1)(A). As noted before, however, this case arose before the enactment of the current statute, and, in any event, the property was under common ownership at the time of the zoning enactment.

1967, however, the enactment of the minimum lot size regulations in 1981 prevented any subsequent landowner from taking advantage of § 4406(1)'s small lot exception to treat parcel one separately from parcel two. For the purposes of development, therefore, the parcels had merged into one property subject to a 20,000 square foot minimum lot size requirement at the time Nowicki purchased them in 1996. See *Drumheller*, 155 Vt. at 529-30, 586 A.2d at 1152; see also *Brum v. Conley*, 572 A.2d 1332, 1336 (R.I. 1990) (holding that under similar statute, where "no evidence of unnecessary hardship exists and two contiguous lots have been purchased under single ownership after the effective date of the zoning ordinance . . . [t]he lots should . . . be merged . . . .").

Furthermore, although parcel two on its own is a conforming lot, its development would create a nonconforming lot in parcel one. This is precisely the "re-creation" of nonconforming uses we forbade in *Drumheller*. 155 Vt. at 529, 586 A.2d at 1152. By developing parcel one first, when there was no question as to lot size and then seeking to develop parcel two as an independent lot, Nowicki seeks to "distinguish a situation where the building construction precedes the land subdivision from a situation where the subdivision occurs first, even though the result — an undersized lot with a home on it — is the same in either circumstance." *Drumheller*, 155 Vt. at 530, 586 A.2d at 1152-53. As in *Drumheller*, we will not permit Nowicki "to create a distinction with no difference in terms of the purposes the zoning ordinance is intended to implement." *Id.* Nor are we swayed by the fact that the parcels may be treated as separate lots for tax purposes or by deed. "[I]t is entirely proper for a town to treat property as a single lot for one purpose and as more than one lot for another purpose, given the different reasons for the classifications." *Id.* at 531, 586 A.2d at 1153. Therefore, § 4406(1) does not permit Nowicki to treat parcel one as an existing small lot.

Nowicki's remaining argument is that while the parcels may have merged and do not qualify as an existing small lot according to the state statute, the town zoning regulation is more protective of property owners and preserves his right to create the nonconforming lot. The zoning regulations for the Town of Norwich in effect at the time of this permit application state that "[a]ny lot, structure, or use which conformed to the zoning ordinance when it was established may be utilized lawfully under this ordinance with the following restrictions: [1.] A lot may not be developed if it is less than one-eighth acre with a width or depth of less than 40 ft."[3] Town of Norwich Zoning Regulations § 8 (1992). The town's

---

[3] There are three other restrictions in the regulation that have no bearing on this case.

zoning regulation does not contain the requirement that a nonconforming lot be owned independently from surrounding properties to qualify for exemption from new ordinances. Instead, any property that at one time conformed to a zoning ordinance may be developed in accordance therewith. This standard is more permissive than the state statute. See 24 V.S.A. § 4406(1). Nowicki argues that the local zoning ordinance is therefore more protective of property owners and should control this case. He contends that the state statute sets a floor protecting property owners, which local ordinances may raise. The Town of Norwich, he argues, has done just that with its existing use ordinance. For the purposes of argument, we accept that if the town ordinance controlled, Nowicki's development of parcel two would be acceptable.

The central flaw in Nowicki's argument is that he misapprehends the context in which zoning ordinances are enacted. Zoning laws are not protective of property owners, but rather restrictive of property owners' rights, as compared to their rights under the common law. See *Kalakowski v. Town of Clarendon*, 139 Vt. 519, 522, 431 A.2d 478, 479 (1981) (zoning ordinances are in derogation of common law rights). In passing a state zoning statute, the Legislature determines the appropriate limitations on how property owners can lawfully use their property. Municipal ordinances that permit a use limited by a state statute undermine these restrictions. If state zoning statutes merely set a floor protective of property owners, as Nowicki contends, then municipal ordinances, in the interest of being "more protective" of property owners, could undo any state zoning law.

Instead, to determine if Nowicki can invoke the town's ordinance to create the nonconforming small lot by developing parcel two, we look to whether the local ordinance conflicts with the state statute. The state's authority to impose zoning restrictions is derived from the state's inherent police powers. *Hinsdale v. Vill. of Essex Junction*, 153 Vt. 618, 626, 572 A.2d 925, 929 (1990). Thus, a "municipality has zoning authority only in accordance with, and subject to, the terms and conditions imposed by the state in making the power grant." *Flanders Lumber & Building Supply Co. v. Town of Milton*, 128 Vt. 38, 45, 258 A.2d 804, 808 (1969). Because municipal authority is derived from the state's authorization, it would be anomalous if state zoning laws could be replaced, overruled, or rendered ineffective by a municipal zoning ordinance.

Therefore, when confronting cases in which a local zoning ordinance is either more restrictive or more permissive of development than state zoning regulations, courts have held that a municipality "may not exercise

[its] grant of power in a manner inconsistent with State law — unless the power to amend or supersede State law has been expressly conferred." *Tpk. Woods, Inc. v. Town of Stony Point*, 514 N.E.2d 380, 381 (N.Y. 1987). Accord *Helicopter Assocs., Inc. v. City of Stamford*, 519 A.2d 49, 52 (Conn. 1986) ("a local ordinance is preempted by a state statute . . . whenever the local ordinance irreconcilably conflicts with the statute") (internal citations omitted); *Emerson Coll. v. City of Boston*, 471 N.E.2d 336, 338 (Mass. 1984) ("local regulations are presumed valid unless a sharp conflict exists between the local and the State regulation"). This standard applies regardless of whether "the local law is a barrier to what the state has required to be done, or allows what the state has said must be prohibited." *In re Patch*, 140 Vt. 158, 177, 437 A.2d 121, 130 (1981); see also *Township of Chester v. Dep't of Envtl. Prot.*, 438 A.2d 334, 337 (N.J. Super. Ct. App. Div. 1981) (local ordinance may not conflict with state law if "the ordinance forbid[s] what the Legislature has permitted or . . . the ordinance permit[s] what the Legislature has forbidden"). Whether a local ordinance conflicts with a state zoning statute depends, in part, on the purpose and policy of the state law. *Helicopter Assocs., Inc.*, 519 A.2d at 52.

Based on the conflict between both the plain language and the purposes of the two regulations, we conclude that there is no way to reconcile the town's ordinance with the state's existing small lot statute. First, as to plain language, the municipal ordinance fails on its face to fulfill the statutory mandate of 24 V.S.A. § 4406(1). The statute requires that "[n]o municipality may adopt zoning regulations which do not provide for . . . [the existing small lots exception of § 4406(1)]." 24 V.S.A. § 4406. The municipal ordinance does not contain the existing small lot language of § 4406(1). Specifically, the municipal ordinance omits the requirement that an existing small lot must be owned independently from surrounding properties. We have stated that "for a municipality to effectively adopt subdivision and area development ordinances, all of the provisions of [what is now 24 V.S.A. chapter 117] must be complied with." *Flanders Lumber*, 128 Vt. at 46, 258 A.2d at 809. See also *City of Scottsdale v. Scottsdale Associated Merchants, Inc.*, 583 P.2d 891, 892 (Ariz. 1978) (municipality that has been delegated power to enact zoning ordinance "must strictly comply" with state statute that provides for the method of eliminating nonconforming uses). Although the question of whether this omission in the municipal ordinance violates state law is not squarely before us, the discrepancy in language is highly probative of the conflict between the ordinance and the statute.

Additionally, as to purpose, the local ordinance's expansive approach to the use of nonconforming lots undermines the legislative purpose of eliminating nonconforming uses. See *In re McCormick Mgmt. Co.*, 149 Vt. 585, 589-90, 547 A.2d 1319, 1322 (1988) (goal of zoning is to eliminate nonconforming uses; rules that protect preexisting small lots in affiliated ownership undermine that legislative policy). In similar situations, other courts have invalidated local ordinances regardless of whether the controlling state statute is perceived as a floor or a ceiling on regulation. For example, in *Morehart v. County of Santa Barbara*, 872 P.2d 143, 146 (Cal. 1994), the court held invalid a local ordinance that restricted development by imposing merger on parcels in more situations than the state statute authorizing local authorities to enact such an ordinance permitted. In so holding, the court determined that the state statute reflected the legislature's concern for uniformity in the conditions under which a local agency could impose merger on parcels to regulate development, and the local ordinance undermined that uniformity. *Id.* at 168. See also *In re Decertification of Eastlake*, 422 N.E.2d 598, 601 (Ohio 1981) (local ordinance that imposed higher standards for building construction "would defeat the avowed purpose of the state building code to encourage standardization of construction methods") (internal quotation omitted).

Similarly, in *Avalon Home & Land Owners Ass'n v. Borough of Avalon*, 543 A.2d 950 (N.J. 1988), the court confronted a local ordinance that permitted the development of nonconforming uses beyond those permitted by a state statute. Because New Jersey's zoning statutes are intended to eliminate nonconforming uses, the court noted that the development of nonconforming uses should be limited. *Id.* at 952. The local ordinance at issue permitted the reconstruction and renovation of nonconforming uses by allowing the structure to have a new configuration and increases in the land coverage of the structure. *Id.* at 951. The court agreed with the trial court's conclusion that "the ordinance impermissibly authorized the reconstruction of nonconforming structures under conditions significantly broader than the limited grant of authority in the [state statute]." *Id.* at 953.

■ In this case, the town's ordinance permits the development of nonconforming small lots where the state statute would not. The two regulations are therefore in direct conflict. Because this conflict concerns the central purpose of the zoning statute — to eliminate nonconforming uses — the state statute must control. See *id.* ("It is fundamental that the municipal zoning power cannot be exercised in a manner inconsistent with the legislatively authorized grant of that power."). Where our Legislature

has spoken clearly about the circumstances under which existing small lots may be developed, we will not give effect to a municipal ordinance that would allow such development under more expansive circumstances. The municipality has no authority to overrule the clear intent of the Legislature. See *Burlington Elec. Dep't v. Vt. Dep't of Taxes*, 154 Vt. 332, 335, 576 A.2d 450, 452 (1990). We therefore find that the Town of Norwich's zoning regulation does not authorize Nowicki to develop parcel two as a conforming lot.

## II.

Finally, we address the issue of whether the trial court properly granted Nowicki's permit for his septic system. Although the case before the Environmental Court focused on whether the proposed system would violate the town's general odor regulation, see Town of Norwich Zoning Regulation § 6.1 (1992) ("There shall be no objectionable odors."), we affirm on other grounds. *Gochey v. Bombardier, Inc.*, 153 Vt. 607, 613, 572 A.2d 921, 925 (1990) (This Court "may affirm a correct judgment even though the grounds stated in support of it are erroneous."). On appeal, appellant argues that the court's findings were clearly erroneous in its determination of how the sewage system would function, and that this functioning would not lead to the release of "objectionable odors." We need not reach this issue, however, because the Environmental Court should not have addressed the permit of the sewage system.

Prior to the current litigation, Nowicki applied for a permit for his septic system under the town's septic ordinances. That permit was granted by the town and appellant appealed to superior court. The court held that the permit was properly granted under the town's special cases provision of the septic ordinance. On appeal to this court, we affirmed the grant of the permit. *Richards v. Nowicki*, 172 Vt. 142, 151, 772 A.2d 510, 518 (2001). In the current proceeding, appellant is attempting to challenge an already-permitted septic system, this time through the town's general zoning ordinance, having already lost a challenge based on the town's septic ordinance.

■ Nowicki argues that appellant's challenge to the septic system "allows Appellant to have a second bite of the administrative apple." We agree.[4] The issue of Nowicki's septic system has been litigated fully and appealed to this Court. A second challenge violates the principles of res judicata and collateral estoppel. See, e.g., *Trepanier v. Getting Organized*,

---

[4] In view of our decision in part I, *supra*, we recognize that affirmance of the septic permit may be of little value.

*Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990). Whether Nowicki's proposed septic system violates the general zoning standard for "objectionable odor" is therefore irrelevant. Appellant has already had a full and fair opportunity to litigate the permit under regulations specifically addressing septic systems. He has no right to use the current challenge to a zoning permit to tack on a second attack on the septic permit. We therefore uphold the Environmental Court's decision to affirm the septic permit without reaching the issue of whether the system would violate the general odor standard.

*The Environmental Court's decision on merger is reversed, and the matter is remanded for a determination on the question of merger under Wilcox v. Village of Manchester Zoning Board of Adjustment, 159 Vt. 193, 616 A.2d 1137 (1992). In all other respects, the order is affirmed.*