STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **ENVIRONMENTAL DIVISION**<br>Docket No. 142-11-16 Vtec |
| In re Speer/McInnis NOV | **DECISION ON THE MERITS** |

### Decision in On-The-Record Appeal

In this on-the-record proceeding, Mary Feeny appeals, and Gregory Speer and Mitzi McInnis cross-appeal, a November 7, 2016 decision, of the Town of Stowe Development Review Board ("DRB") upholding a notice of violation issued by the Town of Stowe Zoning Administrator ("Zoning Administrator").

Ms. Feeny ("Appellant") is self-represented. Mr. Speer and Ms. McInnis ("Cross-Appellants") are represented by Ryan P. Kane, Esq. The Town of Stowe ("the Town") is represented by Amanda S.E. Lafferty, Esq.[1]

### Background

Cross-Appellants own the parcel located at 56 Turner Mill Lane ("the Property") in Stowe, Vermont. The Property is an approximately 9-acre parcel in the Highway Tourist ("UMR") and Rural Residential ("RR") Zoning Districts.[2] The Property hosts a facility commonly known as the Inn at Turner Mill ("Inn").

The Property was subject to a previous DRB decision issued on November 8, 2011. In that proceeding, the DRB approved an application submitted by Mr. Speer to operate a guide service out of the Property (hereinafter "the Guide Service decision," a copy of which is included in the record provided by the Town).

In 2016, the Zoning Administrator inquired into the legal status of the uses of the Property. The Zoning Administrator subsequently concluded that five of the Property's dwelling units and the two additional lodging rooms were in conformance with the Town of Stowe Zoning

---

[1] The Town has not submitted a brief in this appeal.

[2] The Highway Tourist Zoning District was previously known as the "Upper Mountain Road Zoning District." That previous designation is the origin for the "UMR" abbreviation.

Bylaws ("Bylaws"). However, according to the Property's lister card on file with the Town, the multi-family building on the Property contained six dwelling units, in addition to the two lodging rooms. Based upon this representation, the Zoning Administrator issued a Notice of Violation ("NOV") on May 26, 2016, to Cross-Appellants for the sixth dwelling unit (hereinafter "the sixth unit").

Appellant and Cross-Appellants appealed the NOV to the DRB on June 9 and 10, 2016, respectively. The DRB held a hearing on August 8, 2016, and issued a decision upholding the NOV on November 7, 2016.

In upholding the NOV, the DRB relied principally on the Guide Service decision. The DRB concluded in 2016 that the Guide Service decision contained findings that the Property was lawfully hosting five rental dwelling units and two lodging rooms as existing uses which were in conformance with the Bylaws. Because the Guide Service decision was not appealed to this Court, the DRB concluded that it has become final pursuant to 24 V.S.A. § 4472 and the decision is now binding regarding the five rental dwelling units and two lodging units.

Appellant appealed the 2016 DRB decision to this Court on November 3, 2016, and Cross-Appellants filed their notice of appeal on December 6, 2016.[3]

**Standard of Review**

In an on-the-record appeal, the Court considers only the decision below, the record made before the municipal panel, and the briefs submitted by the parties. In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). We do not take new evidence or make our own determination of the facts. We instead review the municipal panel's factual findings to determine whether the decision below "explicitly and concisely restate[s] the underlying facts that support the decision." See 24 V.S.A. § 1209(a)—(b).

The Court will affirm factual findings only if they are supported by substantial evidence in the record below. See In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 76, 186 Vt. 568. In doing so, the Court does not assess credibility of witness testimony or reweigh conflicting evidence in the record. See Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6,

---

[3] Appellant appealed the October 4, 2016 DRB vote directing the Chairman to draft a decision upholding the NOV to ensure a timely appeal; Cross-Appellants appealed the November 7, 2016 decision.

2

181 Vt. 248; In re Appeal of Leikert, No. 2004-213, slip op. at 2 (Vt. Nov. 2004) (unpublished mem.). The Court simply looks to whether the record includes relevant evidence that "a reasonable person could accept . . . as adequate" support for the factual findings. See Devers-Scott, 2007 VT 4, at ¶ 6 (quoting Braun v. Bd. Of Dental Exam'rs, 167 Vt. 110, 114 (1997)).

The Court then reviews the DRB's legal conclusions without deference, unless such conclusions are within the DRB's area of expertise. Stowe Highlands, 2009 VT 76, ¶ 7.

The Court's review is additionally limited to those issues raised by the Appellant and Cross Appellants in their respective Statements of Questions. See V.R.E.C.P 5(f). With these legal standards in mind, we conduct our review of the DRB's 2016 decision, within the context of the legal issues preserved for our review by the parties' respective Statement of Questions.

## Discussion

### I. Whether Appellant has demonstrated that she has standing to appear before this Court

As a preliminary matter, we address Appellant's standing to appeal the DRB decision. Cross-Appellants' Question 3 asks whether Appellant has standing to appeal the DRB decision as an "interested person" pursuant to 24 V.S.A. § 4456(b)(3) and if she can demonstrate an impact upon her or her property.

To qualify as an "interested person" pursuant to 24 V.S.A.§ 4465(b)(3) an appellant must (1) own or occupy property "in the immediate neighborhood" of the proposed project site; (2) "demonstrate a physical or environmental impact to [Appellant's] interests under the criteria reviewed" and; (3) allege that the DRB's decision below "if confirmed, will not be in accord with the polices, purposes, or terms of the plan or bylaw" of the Town. See 24 V.S.A. § 4465(b)(3).

Cross-Appellants, by and through their Statement of Questions, question whether Appellant can demonstrate a physical or environmental impact to her property. They have not further addressed this issue in their brief. It appears that no party disputes the DRB findings that Appellant owns the parcel abutting the Property, and that her property is encumbered by a 25-foot-wide right of way that serves as the sole access for the Property to a main Town road. She

3

argues, in relevant part, that the NOV, and the DRB decision upholding it, permits a change in the use of the access road.[4]

Both before the DRB, and in their respective briefs before this Court, the parties' main disagreements appear to revolve around Cross-Appellants' assertion that six dwelling units within the Inn have existed for more than fifteen years and pre-date the enactment of Town zoning regulations; Appellant asserts that there has been a change of use and that both the NOV and the DRB decision impermissibly permit Cross-Appellants' unlawful use of the Property.

Appellant does not appear to directly address her adversaries' attack upon her party status in this appeal. However, the theme throughout Appellant's initial and reply briefs is that the NOV failed to include all the zoning violations committed on her neighbors' property, and that the DRB aggravated the impacts upon her and her property by upholding the NOV as written.

Considering these allegations, we conclude that Appellant has provided a sufficient showing that a physical or environmental impact to her interests may occur as a consequence of the NOV determinations, the upholding of those determinations by the DRB, and whether those determinations are upheld by this Court. We therefore conclude that Appellant has fulfilled the standing requirements of 24 V.S.A. § 4465(b)(3) and answer Cross-Appellant's Question 3 in the affirmative: Appellant has made a sufficient showing that she has standing to appeal the decision before us as an Interested Person.

Given our determination that Appellant has standing, we move now to address the legal issues raised in her Statement of Questions and the remaining issues in Cross-Appellants' Statement of Questions. However, since many of the legal issues concern what finality was brought by the Guide Service decision, as well as the 1980 subdivision determination that created Cross-Appellants' lot, we first address those general legal issues.

---

[4] The Court notes that, to the extent Appellant argues the NOV will result in "future development potential" and the future enforcement of permit conditions not properly before this Court, such impacts are hypothetical and will not give rise to standing. See In re UVM Certificate of Appropriateness, No. 90-7-12 Vtec, slip op. at 11 (Vt. Super. Ct. Envtl. Div. Feb. 26, 2013) (Walsh, J.), *aff'd* No. 2013-301 2014 WL 3714702 (Vt. Jan. 23, 2014) (citations omitted). We therefore do not address those legal issues in this on-the-record Merits Decision.

4

**II. Whether the Guide Service decision is a final and binding decision pursuant to 24 V.S.A. § 4472 and, if so, on what legal issues.**

As both parties raise issues related to the scope and applicability of the Guide Service decision, the Court finds it instructive to determine on what legal issues the decision reaches a final decision that is binding on these parties.

The DRB concluded in 2016 that the Guide Service decision was a final and unappealed decision pursuant to 24 V.S.A. § 4472 and is binding upon all interested persons. In re Speer McGinnis, Findings of Fact & Conclusions of Law, at 3–4 (Town of Stowe Dev. Review Bd. Nov. 7, 2016). The DRB further found that the Guide Service decision reached a conclusion that five rental dwelling units and two lodging rooms were in conformance with the then-existing Bylaws, and that neither party may now challenge that prior legal decision, since it had not been successfully appealed. Id. We review these legal conclusions without deference. Stowe Highlands, 2009 VT 76, ¶ 7.

Any "decision or act" taken under the municipal planning and development act, V.S.A. Title 24, chapter 117, can be appealed pursuant to 24 V.S.A. § 4472(a). If no appeal is made, that "decision or act" becomes final and binding under 24 V.S.A. § 4472(d).

The term "decision" is not defined statutorily, but "the word connotes finality . . . [;] if a 'decision' does not resolve an issue it is not really a decision, but mere commentary or analysis." Saxon Partners LLC BJ's Warehouse Sketch Plan, No. 5-1-16 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Jul. 15, 2016) (Walsh, J.). Therefore, before determining if § 4472 precludes or permits the parties' present legal challenges, the Court must determine what legal issues the Guide Service decision decides. We note that, when interpreting permit terms, the Court seeks to implement the intent of the decision drafters, which we ordinarily determine by accepting the plain meaning of the words the drafters chose to use in their decision. Agency of Nat. Res. v. Weston, 2003 VT 58, ¶ 16, 175 Vt. 573.[5] We follow those same interpretive guidelines in reviewing the Guide Service decision.

The Guide Service decision makes a finding of fact that five rental dwelling units and two lodging rooms existed on the Property in 2011. In re Speer, Findings of Fact & Conclusions of

---

[5] While this precedent relates to interpreting Agency of Natural Resources permits, the Court finds it applicable to our interpretation of a municipal land use decision, such as the Guide Service decision at issue here.

Law, at 1 (Town of Stowe Dev. Review Bd. Nov. 8, 2011). The DRB then reached the conclusion that the proposed use of the Property as a guide service operation, as well as the pre-existing commercial uses of the Property including the five rental dwelling units and two lodging rooms, were in conformance with the Bylaws. Id. at ¶ 8.

Cross-Appellants assert that the 2016 DRB decision correctly concluded that the Guide Service decision brought finality to the question of whether the five rental dwelling units and two lodging rooms were lawful, pre-existing uses of the Property. Appellant disagrees, although her challenge appears to be premised upon a misinterpretation of that Guide Service decision.

To be clear, the Guide Service decision only addressed an application to expand the uses of the Property to include a guide service to be operated within the existing Inn. The Guide Service decision did not consider an expansion of the Inn's use to include the five rental units or two lodging rooms.

The Guide Service decision documents that the DRB fulfilled its procedural obligations of reviewing the change or expansion of use proposed in the then-pending application. Since the change of use being considered—the addition of a guide service operation to the existing Inn activities—was classified as a conditional use, the DRB included a detailed summary of its conditional use findings and legal conclusions in its 2011 decision. Id. at p. 1–3. This included a review of existing uses at the Property. Id.

One required review of a conditional use proposal is a specific determination of whether "the proposed and existing use is in conformance with the" then existing Bylaws. Id. at 2; see also Bylaws §3.7(2)(A)(4). The DRB conducted such a review and concluded that both the proposed guide service use and the existing commercial use of the Property as including five rental dwelling units and two lodging rooms were in conformance with the then existing Bylaws.[6] Since no party appealed that determination, it became final after the appeal period ran in 2011.

---

[6] Appellant asserts that the Inn's use has been either abandoned or changed after the Town's adoption of zoning, but she fails to point to evidence in the record to support such claims. Regardless, the DRB was the entity charged with assessing the credibility of facts presented, and it found that the credible facts lead to its conclusion that the five rental dwelling units and two lodging rooms were pre-existing uses that have not been abandoned or changed. We conclude that the record includes sufficient facts to support these DRB legal determinations.

6

Appellant mischaracterizes this determination as "permitting" or creating new uses; it does not. Rather, the DRB in 2011 concluded that the rental and lodging uses were lawful, pre-existing uses. There is no language in the Guide Service decision to support Appellant's characterization, and the DRB in 2016 rejected her characterization. We conclude that the record presented to us includes sufficient facts to support the DRB's 2016 findings and conclusions in this regard.

Appellant attempts to collaterally attack the Guide Service decision as not providing proper notice to her, as an interested party, of the application that was then under consideration. She is mistaken in this regard. The record before us reveals that proper notice was provided for the application being considered in 2011: a proposal to add a guide service operation to the Inn's activities, which expansion of use had to be reviewed under the conditional use review standards. There is nothing in the record before us that would justify a procedural challenge to the Guide Service decision, especially since such an attack is prohibited by the exclusivity of remedy rule contained in 24 V.S.A. § 4472(d).[7]

Because of this, the Court can dismiss as non-judiciable Appellant's Question 6, in which Appellant challenges the sufficiency of the notice provided in 2011 of the hearing on Cross-Appellants' guide service application. Not only do we find no support in the record for this challenge, as the decision is a final land use determination pursuant to 24 V.S.A. § 4472(d), the Question constitutes an impermissible collateral attack.

Conversely, the Guide Service decision makes no mention of, nor conclusion regarding, a sixth unit in existence at the Property. Because of this, the permit status of the sixth unit was not confirmed through this unappealed decision. The DRB properly concluded in 2016 that the Guide Service decision did not make a finding that the sixth unit was in conformance with the Bylaws. Therefore, the legality of this use remained at issue. See In re Byrne Trusts NOV, No. 150-7-08 Vtec, slip op. at 14 (Vt. Envtl. Ct. Jul. 15, 2009) (Durkin, J) (instructing lower courts "to refrain from finding implied conditions in a formal written zoning order that contains express conditions") (citation omitted).

---

[7] Cross-Appellants correctly point out that, even if the Court were to determine that this conclusion was ultra vires, such a conclusion may still become final pursuant to § 4472. See In re Musty Permit, 2012 VT 42, ¶ 6, 191 Vt. 483.

Cross-Appellants offer some implied reasons for why the Guide Service decision makes no mention of the sixth unit. That decision was addressing an expansion of the commercial uses of the Inn, and therefore limited its review to what commercial uses were existing and proposed. We reach this conclusion, after having reviewed the Guide Service decision, where there is no mention of the owners' (now Cross-Appellants) dwelling quarters.

III. **Whether the 1980 subdivision approval that created the Inn Property rendered a decision regarding the sixth unit.**

The Property was once part of a much larger parcel of land, totaling some 27± acres. At that time, a lodging facility existed on the Property, although it was operating under the name "Camel Lodge," as depicted on the on the subdivision plan stamped and approved on behalf of the Planning Commission on July 9, 1980.[8]

The subdivision of this parcel was discussed at several Planning Commission meetings, including Commission meetings held on January 21, 1980, February 25, 1980, and November 24, 1980.[9]

At the time of the Planning Commission's 1980 review, the 27± acre parcel was located in what was then known as the Rural Residential ("RR5") Zoning District. As best understood from the record before us, that zoning district apparently had a restriction of no more than one dwelling unit per five acres of land. As with all zoning districts, the then-existing Bylaws allowed for the continued use of pre-existing uses or structures that pre-dated the enactment of zoning.

The record before us confirms this understanding, albeit indirectly, by the discussion memorialized in the Planning Commission minutes. The January 21, 1980 minutes record that the initial subdivision plan called for a one-acre parcel to be subdivided off; that one-acre parcel would host two pre-existing residences (the "Slayton" and "Campbell" residences). The remaining 26±-acre parcel would host the pre-existing Camel Lodge.

---

[8] In the record supplied by the Town, this approved subdivision plan is identified as document #17, although the document numbers are not affixed to the individual documents.

[9] Copies of the minutes for the Planning Commission meetings are contained in the record as documents #14 and 15; the minutes from the November 24, 1980 meeting are not separately indexed, but immediately follow the other meeting minutes in the record.

The Planning Commission appears to have been concerned about the number of underlined additional dwellings that would be built on the retained "Camel Lodge" lot, since they discussed the need to require a term added to the deed descriptions that "stipulate[ed] that only 2 new dwelling units could be built, for a total of 5 units on the 27 A."  Planning Commission Jan. 21, 1980 meeting minutes at 1.

At the February 25, 1980, meeting, the Planning Commission again discussed the proposed subdivision, which created a one-acre lot and a 26-acre lot.  The Commission noted that "since this is in RR5 [Zoning District], only 2 new dwelling units could be added in the future so that the max. density of 5 units on the 26 A. is not exceeded."  Planning Commission Feb. 25, 1980 meeting minutes at 1.  These minutes also reflect that, with that condition, the Planning Commission approved the proposed two-lot subdivision.  Id.

The Planning Commission next took up the further subdivision of the 26± acre parcel into two parcels, with a parcel of 16.5± acres of undeveloped land and the remaining land (9± to 9.5± acres) hosting the Camel Lodge.  Planning Commission Nov. 24, 1980 meeting minutes at 1.  The Planning Commission approved this subdivision proposal, with the density condition from the prior subdivision that only 2 new dwelling units could be "built."[10]  Id.

These minutes are noteworthy, particularly for their brevity.  There are no details memorialized of the then-existing use of the Camel Lodge, nor the number of rooms let out to travelers or other renters.  However, two facts that impact the current proceeding appear clear from the 1980 Planning Commission actions: that the Camel Lodge pre-existed the 1980 subdivision, and the Commission directed that no new "dwellings units could be built."  Id.

Appellant asserts that the new dwelling restriction imposed by the Planning Commission in 1980 limits the number of dwelling units within what is now known as the Inn.  The record only would support such an interpretation if there was some factual foundation to conclude that the rental units within the Inn were added after 1980, since the Planning Commission restriction only applies to "new" or "additional" dwelling units.  We find no support in the record for a finding that the rental units in the Inn were created or "built" after 1980.  In fact, we have no DRB finding

---

[10]  This density restriction was first mentioned and crafted during the Jan. 21, 1980 Planning Commission meeting.  See Planning Commission Jan. 21, 1980 meeting minutes at 1.

presented to us in the pending on-the-record appeal concerning the sixth unit. The only relevant facts presented on this point were Cross-Appellants' assertion that the Inn has contained an owners' quarters since its inception, and that the owners' dwelling unit is separate and apart from the rental dwelling units or lodging rooms.

Neither the Planning Commission in 1980, nor the DRB in 2011, made any mention of the owners' quarters within the Inn. We therefore conclude that the appropriate municipal panels below (Planning Commission or DRB) have not rendered a determination on the legal status of the owners' quarters at the Inn prior to the NOV that is the subject of this appeal.

## IV.  Legal Issues Raised in Appellant's Statement of Questions.

By this analysis, we have sought to resolve Appellant's remaining Questions. Specifically, we note below our analysis of the legal issues posed in each of Appellant's remaining eleven Questions.

By her Question 1, Appellant asks whether the "density condition" imposed in 1980 by the Planning Commission is "an enforceable land use restriction on" the Property. It appears undisputed that the restriction imposed in 1980 on what was then a 26± acre parcel, subsequently further subdivided into two lots of 16.5± acres and 9± acres, continues as a prohibition upon no more than two new dwelling units being "built." Appellant appears to assert that this restriction on addition dwellings should operate to restrict the number of rental dwelling units or lodging rooms operated out of the Inn. However, that restriction is not at issue in this NOV appeal.

Since the undisputed evidence in the record reveals that the Inn, previously known as the Camel Lodge, has operated as a lodging facility prior to 1980, we conclude that the 1980 Planning Commission restriction on building no more than two new dwelling units does not act to prohibit the continued operation of the Inn as a pre-existing lodging operation.

Therefore, while we answer the general legal issue posed in Appellant's Question 1 in the affirmative, we conclude that the 1980 dwelling restriction does not operate to prohibit the current commercial uses of the Inn.

By her Question 2, Appellant asks whether "a properly noticed hearing," seeking an amendment to the 1980 dwelling restriction condition, is a necessary pre-condition for the lawful

10

operation of the Inn and its rental units and rooms. For the same reasons as outlined above, we answer Appellant's Question 2 in the negative, since we conclude, for reasons set forth below, that the Inn's current commercial operations are lawful, pre-existing uses.

Similarly, and for the reasons already stated, we answer Appellant's Question 3 in the negative, since we cannot conclude that the NOV and the 2016 DRB decision upholding it are "impermissible collateral attack[s] on the 1980 Condition" as the sixth unit's legal status was not resolved by the 1980 action.

By her Question 4, Appellant asks whether the NOV evidences a determination that any use of dwelling units at the Inn require conditional use approval to continue to operate. We are confused by Appellant's Question 4, since the Zoning Administrator made no such determination when he issued the NOV. In particular, the Zoning Administrator noted in the NOV that in 2011, the DRB concluded that the five rental dwelling units and two additional lodging rooms were pre-existing at that time, and that those pre-existing uses were in conformance with the zoning regulations.[11]

We find no reference in the NOV that the five rental units or lodging rooms now require conditional use review, nor do we find any evidence in the record to support such an assertion. We therefore answer Appellant's Question 4 in the negative.

By her Question 5, Appellant asks whether the Guide Service decision "constitute[d] . . . the necessary zoning approval for a conditional use [of the Inn] as 5 dwelling units." Appellant's Question 5 reveals Appellant's misinterpretation of both the 2011 and 2016 DRB decisions. As noted above, the conditional use review that the DRB conducted in 2011 was prompted by Cross-Appellants' application for approval of a guide service operation; it <u>did not</u> constitute conditional use review or approval of any of the then-existing lodging units or rooms at the Inn. In conducting

---

[11] We understand the Zoning Administrator's determination that those commercial uses were "conforming with the zoning regulations" to be a reference to the current Bylaw provisions that allows for pre-existing uses that do not conform to the then-existing regulations to nonetheless be allowed as lawful, pre-existing uses. See Bylaws § 3.9(1). However, the Zoning Administrator makes no mention of whether the lodging facilities at the Inn "conform" to the current Bylaws. Since the record does not contain any reference to a permit review of the lodging facilities under the current Bylaws, we assume the Administrator's reference to the lodging facilities being in "conformance" is an implicit determination that those uses have pre-dated the Bylaws.

We note that the Bylaws define a nonconforming use as a "use of land that does not conform to the present regulations but did conform to all applicable laws, ordinances, and regulations prior to the enactment of the present bylaws, including a use improperly authorized as a result of error by the administrative officer." Bylaws § 15.99.

11

their required conditional use review of the Property's uses, the DRB determined that the proposed guide service operation was in conformance, and it determined that the rental units and lodging rooms were pre-existing and, therefore, conforming. There is no evidence in the record that would support a determination that the commercial rental and lodging operations at the Inn would now require conditional use approval. In fact, neither the Zoning Administrator nor the DRB reached such a conclusion. We therefore answer Appellant's Question 5 in the negative.

Appellant's Question 7 addresses the DRB's authority in 2011 to confirm the five rental dwelling units as existing uses. This Question appears to reintroduce legal challenges similar to those posed in her Questions 2, 5 and 6. For those same reasons, we conclude that Appellant mischaracterizes the Guide Service decision and answer Appellant's Question 7 in the negative and note that the Guide Service decision does not constitute a collateral attack on the 1980 Planning Commission determinations.

Appellant's Question 8 presents a straight-forward legal issue which, given our previous analysis, we answer in the affirmative: the Guide Service decision does constitute final determinations on the legal issues presented and addressed, particularly the determination that the commercial uses at the Inn (the five rental dwelling units and two lodging rooms) were at that time lawful, pre-existing uses that were allowed to continue because the Bylaws provided for the continuation of lawful, pre-existing uses of land.

Appellant's Question 9 addresses the Guide Service decision proceeding and also reveals a misunderstanding of what the DRB concluded by its decision. The DRB specifically noted that the commercial uses existing at that time at the Inn conformed to the Bylaws. The record convinces us that the DRB made this determination because it concluded that those commercial uses pre-dated the Bylaws and were afforded a grandfathered status. The DRB's Guide Service decision did not constitute "a zoning approval or permit" as to these uses, as Appellant asserts.

Vermont municipalities are authorized to regulate uses which do not conform to the municipality's current zoning regulations. See 24 V.S.A. § 4412(7). However, we are cautioned that one of the central purposes of zoning is to eliminate nonconforming uses. See In re Casella Waste Mgmt., Inc., 2003 VT 49, ¶ 8, 175 Vt. 335, *quoting* In re Richards, 174 Vt. 416, 424 (2002).

The Town has chosen to allow pre-existing uses to continue, even if they no longer conform to the current Bylaws, provided that such uses are not changed, extended, or expanded. Bylaws §§ 3.9(1)(A)—(C). We understand that the Guide Service decision was a determination that the commercial uses on the Property were pre-existing uses that conform to Bylaws § 3.9(1). While these commercial uses have been determined to be lawful, pre-existing, non-conforming uses, we do not regard them as "permitted," since no permit has been issued authorizing their use, nor is one required. Rather, the Town, through its Bylaws, has chosen to respect the grandfathered status of lawful, pre-existing uses.

Since Appellant's Question 9 is premised upon a mischaracterization of the Guide Service decision and seeks to address the proceedings then-before the DRB, we deem it non-judiciable and dismiss that Question pursuant to 24 V.S.A. § 4472.

By her Question 10, Appellant challenges the Zoning Administrator's decision to issue "a notice of violation for all but one dwelling unit in the Inn at Turner Mill." We understand that, by this Question, Appellant seeks to have the NOV expanded to allege that all of the Inn dwelling units should be alleged to be in violation of the Bylaws. For the same reasons as we have already detailed, we conclude that Appellant's assertions here are without support in the record. We therefore answer Appellant's Question 10 in the negative.

By her Question 11, Appellant asks whether "any preexisting nonconforming use of the Inn . . . as lodging has been abandoned?" We note that the Zoning Administrator made no such determination, and the DRB decided to adopt the Zoning Administrator's determinations by its affirmation of the NOV. In fact, our review of the record reveals no evidence to support an allegation that the rental dwelling units and lodging rooms were abandoned for the minimum one-year period, as required by Bylaws § 3.9(1)(C)(6).

For all the reasons already stated, we conclude that the Zoning Administrator's and DRB determinations recognize the commercial lodging operations at the Inn as lawful, pre-existing uses are supported by substantial evidence in the record. We therefore answer Appellant's Question 11 in the negative.

Lastly, we note that Appellant's allegations in Question 12 that the DRB determinations concerning the NOV were "erroneous, arbitrary, or capricious" are not supported by the record

13

of the proceedings before the DRB. We therefore answer Appellant's Question 12 in the negative.

Having addressed all the legal issues Appellant raises, we turn our attention to the remaining legal issues raised by Cross-Appellants.[12]

## V.     Remaining Legal Issues Raised in Cross-Appellants' Statement of Questions.

Cross-Appellants' Question 1 asks if the DRB erred in concluding the sixth unit was a violation of the Bylaws without a permit "despite the undisputed evidence that the unit has existed and been put to the same use for more than 15 years and since prior [to the] adoption of the [Bylaws]." Cross-Appellant's Question 2 asks if the DRB "err[ed] as a matter of law in concluding that the failure to include the owner-occupied residential unit in the unappealed and final [Guide Service decision] . . . necessarily means that the unit in question now requires a zoning permit."

Cross-Appellants contend that the failure to have received a permit for the sixth unit by and through the Guide Service decision, or by any other means, does not necessarily mean that the unit requires a permit, because the sixth unit's use as the owner's residence predates zoning. They argue that the testimony before the DRB showed that the use and existence of the sixth unit as an owner-occupied apartment predated zoning. For the reasons stated below, we agree with Cross-Appellants' assessment of the record presented to this Court.

Our requested review of both the NOV and the DRB affirmance of it appears to focus exclusively upon the Guide Service decision. While not specifically stated, it appears that both the Zoning Administrator and the DRB reached the legal conclusion that, since the Guide Service decision did not reference the sixth unit, then such use must be regarded as unlawful. However, as we have already noted, simply because the Guide Service decision makes no reference to the owners' quarters does not render that use unlawful.

The record currently before us reveals two undisputed facts: that the sixth unit has been used as the Inn owners' quarters for many years, and that that use has consistently existed since the building on the Property first operated as a lodging facility, more than five decades ago. Even

---

[12] Cross-Appellants pose three Questions in their Statement of Questions. Since we have already addressed their Question 3, the following section only addresses Cross-Appellants' Questions 1 and 2.

Appellant concedes that "the owner's unit occupied by Mr. Speer is a lawfully existing dwelling unit not needing a permit . . .." Appellant's Reply Brief, filed October 2, 2017, at p. 2. Appellant continues that she "does not believe th[e owner's unit] can be considered the sixth unit lawfully existing." We fail to follow Appellant's logic in this regard; whether the owners' dwelling unit is called the sixth unit or not, we conclude that the record reveals that both parties represented that the Inn contains an owners' dwelling unit, in addition to the five challenged rental units and the two lodging rooms, and that the owner's dwelling unit pre-dates the Bylaws.

As a general rule, a use that is determined to be lawfully pre-existing may not be regulated by zoning. Vt. Brick & Block, Inc. v. Vill. of Essex Junction, 135 Vt. 481, 483 (1977). Such a pre-existing use would, therefore, not require a zoning permit. We find no evidence in the record that contradicts Cross-Appellants' assertion that the owners' quarters pre-dated the adoption of Town zoning regulations. In fact, Appellant concurs with this factual representation.

The DRB did not reject Cross-Appellants' assertion that the owners' quarters pre-dates the adoption of zoning and has existed for decades; the DRB simply chose to no address that assertion. We find no evidence in the record to support the DRB's inaction in this regard and therefore overrule their determination (or lack of determination) on this legal issue. Similarly, we conclude that by citing Cross-Appellants for failing to have received a permit for the sixth unit, the Zoning Administrator failed to recognize the lawful, pre-existing use of that dwelling unit as an owners' quarters that has existed for decades. We therefore conclude that the record does not support the factual and legal conclusion contained in the NOV and therefore **VOID** the NOV.

### Order

For the forgoing reasons, we conclude that the record reveals evidence that sufficiently supports the DRB conclusion that the Zoning Administrator acted appropriately in not asserting in the May 26, 2016 Notice of alleged zoning violation that the five rental dwelling units and two additional lodging rooms operated from the Inn at Turner Mill were unlawful uses. However, we conclude that the Zoning Administrator's decision, which was affirmed by the DRB, that the owners' quarters at the Inn, also referred to as a sixth unit, was not a lawful, pre-existing use is not supported by the record in this appeal. We therefore **VACATE** the May 26, 2016 NOV.

This completes the current proceedings before this Court. A Judgment Order accompanies this On-The-Record Merits Decision.

Electronically signed on February 22, 2018 at Burlington, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division