STATE OF VERMONT
ENVIRONMENTAL COURT

}
In re Chimney Ridge Road Merged Parcels    }        Docket No. 208-9-08 Vtec
}

## Decision on Cross-Motions for Summary Judgment

This appeal arises out of a decision by the Town of Weathersfield Zoning Board of Adjustment ("ZBA"), holding that Appellant Gregory Frick's three lots on South Chimney Ridge Road in the Town of Weathersfield merged into one lot by operation of law. The Town of Weathersfield ("Town") opposes Gregory Frick ("Landowner") in this appeal and seeks to have the decision of the ZBA affirmed. Landowner and the Town have each filed a motion for summary judgment.[1]

## Factual Background

For the sole purpose of putting the pending motions in context, we recite the following material facts, most of which are derived directly from the parties' Joint Statement of Undisputed Facts:

1.      On October 27, 2003, Landowner purchased "Lot 8," a 6.8± acre parcel of land developed with a residential home.

2.      On November 13, 2003, Landowner purchased "Lot 10A," a 6.07± acre undeveloped parcel of land.

3.      Lot 8 and Lot 10A do not border each other, but they are nearby.

4.      On February 26, 2004, Landowner purchased the "Ward Lot," a 3.0± acre undeveloped parcel of land.

5.      The Ward Lot is between Lot 8 and Lot 10A and borders both. Lot 8 lies directly southwest of the Ward Lot, and Lot 10A lies directly north of the Ward Lot.

6.      All three of Landowner's lots are accessed via a private road named South Chimney Ridge Road ("the Road"). The Road dissects Lot 8, runs adjacent to the Ward Lot, and then crosses lot 10A. The Road easement is 50 feet wide where it crosses Lot 8 and 30 feet wide across Lot 10A. At the end of its traverse of Lot 10A, the Road comes to a dead end. The Road provides access to two other lots besides the three lots owned by Landowner.

---

[1]   Landowner is represented by Gregory V. Mauriello, Esq., and the Town is represented by Christopher J. Callahan, Esq.

7. Although part of the Road is directly between Lot 8 and the Ward Lot, a small section of Lot 8 lies east of the Road. That section of Lot 8 directly borders the Ward Lot.

8. All of Landowner's three lots are within the Conservation Zoning District ("C-10 District") established pursuant to the Town of Weathersfield Zoning Bylaws ("Bylaws").

9. The Ward Lot was created by deed on September 27, 1963, when a previous owner sold 3± acres of a 34± acre parcel. This deed was recorded the next day in the Weathersfield land records.[2]

10. Lot 8 and Lot 10A were created by a series of subdivisions between 1986 and 1990.

11. On February 6, 2008, Landowner's counsel contacted the Town Zoning Administrator to request an opinion on whether any of Landowner's three lots had merged. After a series of letters, the Zoning Administrator issued an opinion on June 24, 2008, stating that the Ward Lot would have to merge with one of the other two lots. Landowner appealed that decision to the ZBA, which held on August 29, 2008, that all three of Landowners' lots had already merged by operation of law. That ZBA decision is the subject of this appeal

## Discussion

Each party has asked this Court for summary judgment, which may only be granted when "the pleadings, depositions, [and] answers to interrogatories, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). Generally, the burden of proof is on the party requesting summary judgment. Chapman v. Sparta, 167 Vt. 157, 159 (1997). When presented with cross-motions for summary judgment, we must consider each motion in turn and afford all reasonable doubts and inferences to the party opposing the particular motion under consideration. DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 8, 181 Vt. 609 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)).

This case involves the doctrine of merger[3]—the idea that "contiguous" undersized lots merge together to form one larger lot when they are brought under common ownership. 24 V.S.A. § 4406(1) (repealed as of July 1, 2004).[4] Here, it is undisputed that all three of

---

[2] Although it is not clear whether the Town had any zoning regulations in place at any time before 1994, the Town presumably did not have subdivision regulations in place at the time that this deed was recorded in 1963.

[3] Some refer to this doctrine as "silent merger," since it occurs by operation of law and without notice to the affected landowners.

[4] As discussed in detail below, although 24 V.S.A. § 4406(1) has now been replaced by § 4412(2), the legal issues in this appeal are governed by § 4406(1).

2

Landowner's lots are undersized; each lot is nonconforming as to the 10 acre minimum lot size requirement for the C-10 District. See Bylaws § 4.3.2(e). As for whether the lots are "contiguous" under 24 V.S.A. § 4406(1)(A), it is undisputed that the Ward Lot and Lot 10A are contiguous, but the parties dispute this issue with regard to the Ward Lot and Lot 8, which are separated in large part by the Road. See generally Wilcox v. Vill. of Manchester Zoning Bd. of Adj., 159 Vt. 193, 197 (1992) (explaining the circumstances in which a road can prevent merger from occurring). We therefore address these alleged mergers separately, rather than addressing whether all three lots have merged.

## I. Whether the Ward Lot and Lot 10A Have Merged As a Matter of Law

We begin our analysis by looking at whether the Ward Lot and Lot 10A have merged as a matter of law. We choose to look at these lots first because they are not separated by a road and therefore do not present any issues regarding whether a road prevents merger from occurring. See generally Wilcox, 159 Vt. at 197.

The question of whether the Ward Lot and Lot 10A have merged is appropriate for summary judgment; it does not involve any genuine issues of disputed material facts. See V.R.C.P. 56(c)(3). Indeed, the parties here have collaborated to draft a Joint Statement of Undisputed Facts in which they have stipulated to all the facts that are material to this legal question.

Although Landowner also submitted his own affidavit and Statement of Undisputed Material Facts, these documents do not provide any conflicting facts that are material to the legal arguments at issue here. In particular, Landowner claims that he could suffer up to $100,000 in economic loss from the merger of his three lots and that he was either unaware of the Vermont merger rule or that he was mistaken as to how it operated. Although we sympathize with Landowner and find his comments sincere and credible, the Vermont merger rule and its implementing regulations do not allow the ZBA or this Court on appeal to consider factors such as economic loss.[5] As for Landowner's claims that he was unaware of how the merger doctrine operated, the Vermont Supreme Court long ago noted that the maxim that ignorance of the law is not an excuse, "and the corresponding presumption that every one is conclusively presumed to

---

[5] Landowner has not alleged that the Vermont merger rule deprives him of all economically viable uses of his land so as to constitute an unconstitutional taking under Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992), and we therefore do not address that issue; our jurisdiction is limited to only those issues raised in a Statement of Questions. See, e.g., Vill. of Woodstock v. Bahramian, 160 Vt. 417, 424 (1993); V.R.E.C.P. 5(f).

know the law, are of unquestioned application in Vermont as elsewhere, both in civil and in criminal cases." State v. Woods, 107 Vt. 354, 356–57 (1935). Thus, no matter how much this Court might agree with Landowner that he should have had some form of actual notice that his purchase of the Ward Lot could lead to the merging of two or more of his parcels, such concerns must be directed at the Vermont Legislature or at the drafters of municipal zoning laws.

In fact, to a certain extent, the Vermont Legislature has already shown a willingness to amend its statutes to ameliorate the harshness of what is often referred to as "silent merger"—a term that reflects the reality that such mergers often occur without any notice or other fair warning to landowners. Under the old Vermont merger rule, municipalities were barred from creating exceptions to the doctrine of merger, except as already provided by statute. See 24 V.S.A. § 4406(1) (repealed) (stating that "[n]o municipality may adopt zoning regulations which do not provide" for the merger doctrine as described in the statute); see also In re Richards, 174 Vt. 416, 424–25 (2002) (interpreting § 4406(1) as precluding municipalities from creating additional exceptions to the merger doctrine).[6] The Legislature amended that statutory provision in 2003 and replaced § 4406(1)(A) with the new Vermont merger rule in § 4412(2). See 2003, No. 115 (Adj. Sess.), §§ 95, 119. Although otherwise quite similar, the new Vermont merger rule includes a savings clause that allows municipalities to create bylaws that are "less restrictive of development of existing small lots." 24 V.S.A. § 4412(2)(C). Thus, under the new Vermont merger rule, municipalities can theoretically elect to write zoning bylaws that allow parcels such as Landowner's parcels to remain separate where they would otherwise have merged. See id.

Unfortunately for Landowner, the old Vermont merger rule is the one that was in effect when he purchased the Ward Lot on February 26, 2004. The new Vermont merger rule did not go into effect until several months later—specifically, on July 1, 2004. See 2003, No. 115 (Adj. Sess.), § 119.

Although Landowner argues that principles of fairness require this Court to treat this appeal under the new Vermont merger rule, we find no legal basis for doing so. Under 1 V.S.A. § 214(b), we have no choice but to apply the statute that was in effect at the time of the alleged mergers:

---

[6] Although this holding from In re Richards is no longer the law with respect to the current statutory framework, see 24 V.S.A. § 4412(2)(C), In re Richards is still the law with respect to the proper interpretation of § 4406(1), which was in effect during the time period relevant to the issues in this appeal, as explained above. On this point, see generally In re Bailey, 2005 VT 38A, ¶ 9 n.*, 178 Vt. 614.

4

The amendment or repeal of an act or statutory provision, except as provided in subsection (c) of this section, shall not:

> (1) Affect the operation of the act or provision prior to the effective date of the amendment or repeal thereof;
>
> (2) Affect any right, privilege, obligation or liability acquired, accrued or incurred prior to the effective date of the amendment or repeal;
>
> (3) Affect any violation of the act or provision amended or repealed, or any penalty or forfeiture incurred thereunder, prior to the effective date of the amendment or repeal;
>
> (4) Affect any suit, remedy or proceeding to enforce or give effect to any right, privilege, obligation or liability acquired, incurred or accrued under the amended or repealed provision prior to the effective date of the amendment or repeal; and the suit, remedy or proceeding may be instituted, prosecuted or continued as if the act or provision had not been repealed or amended.

1 V.S.A. § 214(b); see also V.R.E.C.P. 5(g) (requiring this Court to "apply the substantive standards that were applicable before the tribunal appealed from").

In short, under 1 V.S.A. § 214(b), any amendments to the Vermont merger rule that were not in effect on February 26, 2004—the day when Landowner purchased the Ward Lot and thereby created the mergers alleged in this appeal—are irrelevant to our analysis. The amended Vermont merger rule, 24 V.S.A. § 4412(2), did not become effective until July 1, 2004, and therefore cannot affect the operation of § 4406(1)—the merger rule that was in effect on the day Landowner purchased the Ward Lot. See 1 V.S.A. § 214(b).[7] In short, since a merger was

---

[7] We note here that this case is distinguishable from In re Eastview at Middlebury, Inc., No. 256-11-06 Vtec (Vt. Envtl. Ct. Feb. 15, 2008) (Durkin, J.), where this Court held that an applicant for an Act 250 permit could elect to have an application reviewed under a more recent town plan that was more favorable to the developer. Id. at 24–25. In Eastview, the issue was a permit application, and the Court's holding there was merely a way of recognizing that an applicant has the right to withdraw his permit application and then resubmit it to take advantage of an amended town plan; our holding in Eastview therefore was not contrary to 1 V.S.A. § 214(b), since it did not affect any substantive rights of the parties. Here, on the other hand, we are dealing with an alleged merger by application of law that occurred on a specific date. In the case at bar, Landowner cannot similarly withdraw and resubmit his purchase of the three adjoining lots. The purchase of the Ward Lot has already occurred and cannot now be undone, no matter how much Landowner undoubtedly wishes that it were otherwise. Thus, allowing Landowner to apply the amended statute here could have a substantive impact on the case, rather than just allowing Landowner to avoid a procedural hurdle as in Eastview.

Additionally, even if Eastview were applicable here, we would be reluctant to follow it in light of the Vermont Supreme Court's recent decision in In re Eustance Jurisdictional Opinion, 2009 VT 16. The Eustance Court addressed whether it was appropriate to apply an amended statute to a permitting dispute where the amended statute was more permissive of development but was not effective at the time the dispute arose. Id. at ¶¶ 25–27. The Vermont Supreme Court rejected the developer's arguments and, in a strict application of 1 V.S.A. § 214(b), held that the effective statute at the date of the original permit application must govern the case. Eustance, 2009 VT 16, ¶¶ 25–27. According to the Court, an amended statute can only be applied if it "'will not affect any right, privilege, obligation, or liability acquired prior to the statute's amended date.'" Id. at ¶ 27 (quoting Sanz v. Douglas Collins

effectuated under the old law when Landowner purchased the Ward Lot on February 26, 2004, the new law cannot effectuate an "un-merger" of his property thereafter. In re Richards, 2005 VT 23, ¶ 8, 178 Vt. 478 ("Richards II") ("[O]nce two parcels merge by operation of law, they remain so notwithstanding a subsequent owner's efforts or desire to separate them for development.").

For these reasons, we conclude that 24 V.S.A. § 4406(1) is applicable to Landowner's purchase of the Ward Lot. Under a straightforward application of that statute, we conclude that the Ward Lot and Lot 10A merged as a matter of law. See 24 V.S.A. § 4406(1)(A). That statute specifically states that if an existing undersized lot "subsequently comes under common ownership with one or more contiguous lots, the lot shall be deemed merged with the contiguous lot for purposes of this chapter." Id. As noted earlier, it is undisputed that the Ward Lot and Lot 10A are contiguous, undersized lots, which came under common ownership when Landowner purchased the Ward Lot on February 26, 2004. These two lots therefore merged as a matter of law on that date. See id.

There is an exception provision contained in § 4406(1), which depends upon a number of requirements being met, including the existence of separate water supply and wastewater disposal systems for each lot. See id. § 4406(1)(A)(ii). However, since the parties have stipulated that both the Ward Lot and Lot 10A are without any sort of water supply or wastewater disposal systems, this exception provides no relief for Landowner.

Landowner's arguments for avoiding merger are based on an interpretation of the Town Bylaws.[8] But under the old merger rule, as interpreted by the Vermont Supreme Court, nothing in a municipality's bylaws can allow development beyond what is allowed under the explicit statutory exception to the merger rule: "Where our Legislature has spoken clearly about the circumstances under which existing small lots may be developed, we will not give effect to a municipal ordinance that would allow such development under more expansive circumstances. The municipality has no authority to overrule the clear intent of the Legislature." In re Richards,

_____

Construction, 2006 VT 102, ¶ 7, 180 Vt. 619). Therefore, this Court, even if sympathetic to Landowner's arguments, is directed by the Vermont Supreme Court to apply the old Vermont merger rule to this dispute.

[8]   Landowner, the Town, and the ZBA in the proceedings below have all cited to various sections of what we presume to be the most recent version of the Town Bylaws. However, this matter is actually governed by the version of the Bylaws that was in effect on February 26, 2004, as that was the date when the land purchase that caused this merger occurred. While in some circumstances this might lead the Court to remand a case to the ZBA to apply in the first instance the applicable version of its bylaws, such an exercise would be futile here, since we find that the statutory merger rule is dispositive and that it is therefore irrelevant what the Town Bylaws say on this issue.

6

174 at 424–25.[9] Thus, the statutory merger rule marks the beginning and end of our analysis here; the Town is without authority to grant exceptions to that statute, and it is therefore irrelevant what (if anything) the Bylaws say on this issue.

In summary, regardless of how much the Court might sympathize with Landowner for the economic loss that occurred without actual notice to him and by operation of law when Landowner purchased the Ward Lot, it is the Court's duty to apply the law as it stands. Here, the plain language of 24 V.S.A. § 4406(1)(A) leaves us no choice but to find that a merger occurred when Landowner purchased the Ward Lot. Further, even if there were any doubt as to the plain language of this statute, we would come to the same conclusion based upon legislative intent. See, e.g., Merkel v. Nationwide Ins. Co., 166 Vt. 311, 314 (1997) (stating that courts must aim to "discern and implement the intent of the Legislature" when interpreting statutes). Our Supreme Court has noted that the purpose of the Vermont merger rule is to phase out nonconforming, undersized lots. Drumheller v. Shelburne Zoning Bd. of Adj., 155 Vt. 524, 529 (1990). Under the old version of the Vermont merger rule, municipalities cannot enact bylaws that prevent mergers that would otherwise occur, since such bylaws would contravene the intent of the Legislature to phase out these nonconforming, undersized lots. See In re Richards, 174 Vt. at 424.[10]

For these reasons, we conclude that 24 V.S.A. § 4406(1)(A) was applicable at the time that Landowner purchased the Ward Lot on February 26, 2004, and § 4406(1)(A) mandates that

---

[9] The authority to issue zoning regulations is derived from the state's police powers, and so the authority of a municipality to enact zoning ordinances is entirely dependent on the grant of police powers to the municipalities by the Legislature. See In re Richards, 174 Vt. at 422. Thus, municipalities have "zoning authority only in accordance with, and subject to, the terms and conditions imposed by the state in making the power grant." Flanders Lumber & Bldg. Supply Co. v. Town of Milton, 128 Vt. 38, 45 (1969); accord In re Richards, 174 Vt. at 422 ("[I]t would be anomalous if state zoning laws could be replaced, overruled, or rendered ineffective by a municipal zoning ordinance.").

[10] Other aspects of the legislative history of 24 V.S.A. § 4406(1) provide further proof that the Legislature intended to use the merger rule to phase out nonconforming, undersized lots, even at the expense of fair notice to landowners. Before 1998, § 4406(1) did not have any subsections specifically defining merger. Thus, the Vermont Supreme Court held in 1998 that "under the language of § 4406(1), a parcel's exempt status as a nonconforming use is not diminished, nor is merger automatically triggered, when and if the parcel is brought into common ownership with an adjoining parcel after the effective date of the ordinance, absent language in the zoning ordinance providing to the contrary." In re Weeks, 167 Vt. 551, 557 (1998). This passage from In re Weeks no longer applies, now that the Legislature has changed § 4406(1) to add subsections, including specific language stating that merger is automatically triggered at any time that undersized parcels come into common ownership. See 1998, No. 125 (Adj. Sess.), § 6; see also In re Richards, 174 Vt. at 420, n.2 ("The amended version of § 4406(1) appears to respond to our holding in Weeks by requiring lots that come under common ownership subsequent to the enactment of zoning regulations 'shall be deemed merged with the contiguous lot for purposes of this chapter.'" (citing 24 V.S.A. § 4406(1)(A))).

the Ward Lot and Lot 10A merged as a matter of law on that date. We therefore **GRANT** summary judgment in favor of the Town on this issue.

## II.     Whether the Ward Lot and Lot 8 Have Merged As a Matter of Law

We next address whether Lot 8 has also merged with the Ward Lot, thereby creating one large parcel that encompasses all three lots. As an initial matter, we note that our above analysis also applies to this alleged merger, with the exception that the parties dispute whether Lot 8 is contiguous with the Ward Lot. Thus, if Lot 8 is contiguous, it merges with the Ward Lot for all of the reasons described above, and Landowner is left with one large parcel that encompasses all three lots. If, on the other hand, Lot 8 is not contiguous with the Ward Lot, Landowner is left with two lots: (1) Lot 8, and (2) the parcel that encompasses the other two lots (the merged Ward Lot and Lot 10A).

At first glance, Lot 8 and the Ward Lot appear to be contiguous, in that they have a shared border. That said, this matter is complicated by the existence of the South Chimney Ridge Road, which Landowner argues prevents merger from occurring here. Although part of the Road is directly between Lot 8 and the Ward Lot, a small section of Lot 8 lies east of the Road; that section of Lot 8 directly borders the Ward Lot. This case is therefore distinguishable from In re Jenness & Berrie, 2008 VT 117, where "the parties stipulated that the parcels [we]re not contiguous because of the road between them." Id. at ¶ 12. Nevertheless, Landowner can still argue that the Road prevents Lot 8 from merging with his other lots.

The Vermont Supreme Court has outlined an exception to the Vermont merger rule: "a right-of-way which, because of location and function, effectively separates the parcels that it physically connects, so they cannot be used in the ordinary manner as a single 'lot,' may render those parcels separate for purposes of 24 V.S.A. § 4406(1) and conforming zoning bylaws." Wilcox, 159 Vt. at 197. Thus, we must determine whether the Road between Lot 8 and the Ward Lot "effectively separates" those parcels in the way described by the Wilcox Court. Id.

In Wilcox, the Supreme Court was careful to caution that a right-of-way separating two parcels will not automatically prevent merger. See id. at 197–98. Rather, a trial court must look specifically at the function and location of the right-of-way to determine whether it separates the parcels in a way that prevents merger. See id.

Again, the key question here is whether the right-of-way prevents the ordinary use of the land as a single lot. Id. at 197. Although the Vermont Supreme Court has not defined what

8

constitutes the ordinary use of a single lot, the Court has identified that uses such as gardening are "ordinary uses" of land surrounding a residence; where these types of uses are not frustrated by the presence of a right-of-way, the right-of-way does not prevent merger of the lots in question. See Richards II, 2005 VT 23, ¶ 10. Although Landowner could probably use the combined parcel of the Ward Lot and Lot 10A as a garden serving the residence on Lot 8, we do not currently have the facts before us to make such a determination at this early stage in these proceedings. Further, Richards II was a much easier case than this in that it involved a private drive that was only 20 feet wide and served a single residence, see id. at ¶ 4, whereas here the Road is 50 feet wide between Lot 8 and the Ward Lot, continues northward, and serves two lots owned by people other than Landowner.

In short, Wilcox calls for a fact-based inquiry as to the function and location of the right-of-way to determine whether it prevents use of the parcels as a single lot. In a close case such as this one, this inquiry is inappropriate for summary judgment. See In re Miller Subdiv. Final Plan, 2008 VT 74, ¶ 10 ("We conclude that Wilcox and Richards [II] apply and that these cases required the Environmental Court to evaluate whether the presence of [a road] effectively separated the shoreland parcel from the main parcel such that it prevented them from functioning as a single lot. We note as well that the stipulation of facts on which the court acted provided very little information from which the court could make any determination on summary judgment. Thus, based on the record before us, we conclude that summary judgment was inappropriate.").

As mentioned earlier, when presented with cross-motions for summary judgment, as is the case here, we must consider each motion in turn and afford all reasonable doubts and inferences to the party opposing the particular motion under consideration. DeBartolo, 2007 VT 31, ¶ 8 (citing Toys, 155 Vt. at 48). With this standard in mind, it is clear that material facts are in dispute as to whether the Road prevents merger of Lot 8 with Landowner's other lots, and we are therefore unable to conclude that either side is "so clearly correct as to be entitled to a judgment 'as a matter of law.'" Berlin Dev. Assocs. v. Dep't of Soc. Welfare, 142 Vt. 107, 110 (1982) (quoting V.R.C.P. 56(c)). We therefore **DENY** both motions for summary judgment insofar as they ask this Court to make a determination as to whether Lot 8 has merged with Landowner's other lots.

9

## Conclusion

For all these reasons, we conclude that 24 V.S.A. § 4406(1)(A) was applicable at the time that Landowner purchased the Ward Lot on February 26, 2004, and § 4406(1)(A) mandates that the Ward Lot and Lot 10A merged as a matter of law on that date. We therefore **GRANT** summary judgment in favor of the Town on this issue. As for whether Lot 8 has also merged with the combined parcel of the Ward Lot and Lot 10A, we find material facts to be in dispute here, and we therefore **DENY** both motions for summary judgment on this issue. We therefore direct that this matter be set for trial.

Done at Berlin, Vermont, this 31st day of July 2009.

_____
Thomas S. Durkin, Environmental Judge